**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| NATHAN HOOPES and | ) | |
| DEVON HOOPES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 1:10-CV-365 |
| vs. | ) | |
| | ) | |
| GULF STREAM COACH, INC., and | ) | |
| GENERAL RV CENTER, INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the Motion for Summary Judgment to Enforce Arbitration Clause, filed by Defendant General RV Center, Inc. on May 16, 2011. (DE #29.) For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part. To the extent that Defendant General RV Center, Inc. asks this Court to compel arbitration, that request is **DENIED**. However, the motion is **GRANTED** to the extent that Defendant General RV Center, Inc. seeks dismissal of the claims against it as set forth in the Amended Complaint. Accordingly, Defendant General RV Center, Inc. is **DISMISSED** from this lawsuit. The claims against Defendant Gulf Stream Coach, Inc. remain pending before this Court.

PROCEDURAL HISTORY

Prior to filing the instant Motion for Summary Judgment, Defendant General RV Center, Inc. ("GRV") filed an earlier Motion for Summary Judgment to Enforce Arbitration Clause on January 20, 2011. (DE #14.) However, because the parties stipulated on the record that certain claims against GRV were to be excluded and resolved by way of arbitration (see DE #'s 17 & 25-1), an Amended Complaint was filed on April 25, 2011 (DE #25), which rendered the earlier Motion for Summary Judgment to Enforce Arbitration Clause moot. (DE #26.) GRV then filed the instant Motion for Summary Judgment to Enforce Arbitration Clause on May 16, 2011. (DE #29.) Plaintiffs Nathan and Devon Hoopes (the "Hoopes'") filed a Response on June 3, 2011. (DE #32.) GRV filed its Reply on June 13, 2011. (DE #34.) Thus, the instant Motion is now fully briefed and ripe for adjudication.

DISCUSSION

Although GRV requests dismissal from this lawsuit, it has titled its Motion for Summary Judgment as one to "Enforce Arbitration Clause" and references the appropriateness of submitting all of the claims to arbitration throughout its brief. This motion was filed by GRV in lieu of an answer to the Amended Complaint, and no discovery has yet been conducted in this case.

-2-

The parties have presented their briefs pursuant to the summary judgment standard; however, both acknowledge the Federal Arbitration Act (the "FAA"). See 9 U.S.C. §§ 1 *et seq.* Section 3 of the FAA allows a district court to stay proceedings where an issue is referable to arbitration pursuant to a valid arbitration clause, and section 4 allows a court to compel arbitration when one party has failed, neglected, or refused to arbitrate under a written agreement.  9 U.S.C. §§ 3, 4.  Although the FAA does not dictate a particular standard to be used when evaluating issues of arbitration, the Seventh Circuit has approved the use of Rule 56(e) of the Federal Rules of Civil Procedure in that the party opposing compelled arbitration "must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002).  "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*  When viewing the evidence presented, that "of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  As will be discussed in context below, the Seventh Circuit has also indicated that dismissal for improper venue based on an arbitration agreement's forum selection clause is appropriate under Federal Rule of Civil

Procedure Rule 12(b)(3).  See *Faulkenberg v. CB Tax Fran. Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011).  In this context, "[w]hen ruling on a motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings . . . if the parties submit evidence outside the pleadings."  *Id*. at 809-10 (internal quotation marks and citation omitted).  Facts should be construed and reasonable inferences drawn in favor of the plaintiffs.  *Id*. at 806.  Therefore, based on the particular circumstances of this case, whether GRV is seeking dismissal pursuant to the traditional summary judgment rubric, compelled arbitration pursuant to the FAA, or dismissal for improper venue based on a forum selection clause related to arbitration, the standard of review is primarily the same.


Facts

     For purposes of this motion, the material facts are largely undisputed.  On January 23, 2010, the Hoopes' purchased a Gulf Stream Super Nova recreational vehicle ("RV").  The RV was assembled by Gulf Stream Coach, Inc. ("Gulf Stream") and sold to the Hoopes' by GRV, an independent, authorized dealer of Gulf Stream vehicles.[1]  At the time of purchase, the Hoopes' and GRV

_____

     [1] The Hoopes' are citizens of Ohio.  Gulf Stream, whose principal place of business is located in Nappanee, Indiana, is an Indiana citizen for jurisdiction purposes.  General RV is a Michigan corporation and is a Michigan citizen for jurisdiction purposes.  According to the Amended Complaint, jurisdiction is premised both on diversity and on federal question pursuant to the Hoopes' claim under the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et*

entered into a Purchase Agreement (the "Agreement"), which was signed by the Hoopes' and a representative from GRV. (DE #32-2.) The Agreement is a two-sided document and contains the following provision, which is located directly above the Hoopes' signatures:

> THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER. NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT AND NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN HAVE BEEN MADE, WHICH ARE NOT CONTAINED ON THIS DOCUMENT. BY SIGNING BELOW PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS THE TERMS OF THIS AGREEMENT, INCLUDING THOSE PRINTED ON THE REVERSE SIDE, WHICH INCLUDE AN ARBITRATION AGREEMENT, AN "AS IS" CLAUSE, AND A CHOICE OF LAW PROVISION INDICATING THAT MICHIGAN LAW WILL APPLY TO ANY POTENTIAL DISPUTES.

(*Id.*) On the reverse side of the Agreement, a clause ("Arbitration Clause"), printed in bold type, provides the following:

> ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE BREACH OF THIS AGREEMENT, THE SUBJECT OF THIS AGREEMENT, AND/OR THE RECREATIONAL VEHICLE SOLD PURSUANT TO THIS AGREEMENT, SHALL BE RESOLVED BY ARBITRATION ADMINISTERED BY THE OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION LOCATED IN OAKLAND, COUNTY, MICHIGAN, USING THE SUBSTANTIVE LAWS OF THE STATE OF MICHIGAN, IN ACCORDANCE WITH ITS THEN CURRENT ARBITRATION RULES. ARBITRATION SHALL BE THE EXCLUSIVE REMEDY OF THE PARTIES. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATION MAY BE ENTERED IN ANY COURT HAVING JURISDICTION.

(*Id.*) The Hoopes' also received a copy of a "Limited Warranty"

---

*seq.*

applicable only to Gulf Stream; this warranty does not contain an arbitration clause. (DE #32-3.) The Hoopes' did not sign or receive any warranty specifically applicable to GRV.

Between January 2010 and July 2010, the Hoopes' experienced trouble with the slide-out room of their new RV and brought it to GRV numerous times to be repaired. Because the repairs by GRV were ultimately unsuccessful, the Hoopes' brought the RV to a representative from Gulf Stream in August of 2010, for inspection. The Hoopes' assert, by way of an affidavit of Nathan Hooopes, that a representative from Gulf Stream informed him that "the problem with the slide-out mechanism was a failure by [GRV] to tighten a lock nut in the slide-out mechanism." (DE #32-1.) Still not satisfied as to the condition of their RV, the Hoopes' filed a multi-count Complaint with this Court against both Gulf Stream and GRV on October 19, 2010. The Complaint was amended on April 25, 2011. The Hoopes' allege causes of action against GRV and/or Gulf Stream under the Magnuson-Moss Warranty Act, theories of breach of express and implied warranties, violations of lemon laws of Ohio, Indiana, and/or Michigan, breach of contract, promissory estoppel, violations of the consumer protection laws of Indiana, Michigan, and Ohio, and a general negligence theory related to the unsuccessful repairs. On May 16, 2011, Gulf Stream filed an Answer, and GRV filed the instant Motion for Summary Judgment to Enforce Arbitration Clause. The issue presently before this Court

is whether the post-sale causes of action against GRV fall within the scope of the parties' Arbitration Clause.

Applicable Law

Congress enacted the FAA, 9 U.S.C. §§ 1 *et seq.*, to reverse the pervasive judicial hostility towards arbitration and to institute a national policy both favoring it and "plac[ing] arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). If contracts to arbitrate involve "commerce," the FAA deems those agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While section 2 reflects a "liberal federal policy favoring arbitration," it also provides recognition that agreements to arbitrate are ultimately matters of contract. *AT&T Mobility LLC v. Concepcion*, --- U.S. ----, 131 S.Ct. 1740, 1745 (2011) (citations omitted). As such, the Supreme Court has stated that arbitration agreements are to be enforced pursuant to their written terms and that "parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes." *Id*. at 1748-49 (citations and emphasis omitted). See also *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 662 (7th Cir. 2002) ("arbitration is a matter of contract between the relevant parties;

no party can be required to arbitrate absent an agreement to do so.") As the Supreme Court has recently reemphasized, "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes— *but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, --- U.S. ----, 130 S.Ct. 2847, 2857 (2010) (emphasis in original) (citations and internal quotation marks omitted).

Under the FAA, "arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). It is a matter for the court to determine "whether parties have agreed to submit a particular dispute to arbitration." *Granite Rock,* 130 S.Ct. at 2855 (citation and internal quotation marks omitted). Questions regarding the applicability of an arbitration clause to a particular dispute are governed by "ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, as courts analyze these issues, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995)

(quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).[2]  Only when a court has determined that "the parties' arbitration agreement [i]s validly formed and that it cover[s] the dispute in question and [i]s legally enforceable," should arbitration be compelled.  *Granite Rock*, 130 S.Ct. at 2858.  In addition, the Seventh Circuit has recently stated:

> To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation.  Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law.  To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.

*Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (internal quotation marks and citations omitted).

Here, while it is undisputed that the FAA applies because the contracts involve commerce, both the underlying Agreement and the Arbitration Clause itself contain choice of law provisions, which

---

[2] The *Granite Rock* Court noted that a presumption of arbitrability only applies when (1) an ambiguity exists in a validly formed arbitration agreement as to the coverage of a particular dispute; and (2)the presumption is not rebutted by the opposing party.  *Granite Rock*, 130 S.Ct. at 2858-59.  In reversing the court of appeals' judgment, the Supreme Court ultimately concluded that a question regarding the formation date of a contract was one for judicial determination and that the "parties' ratification-date dispute" was outside of the scope of the rather narrow arbitration agreement.  *Id*. at 2860-62.

provide that Michigan law shall apply to any disputes arising between the parties.[3]  Thus, the Court will apply Michigan law to construe the scope of the Arbitration Clause.[4]  See e.g. *Ross Bros. Constr. Co., Inc. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 874 (7th Cir. 2002) (when determining whether a claim is covered by the arbitration clause, that clause "must be interpreted pursuant to the purchase order agreement's choice of law provision."); *Shriner v. Signal Fin. Co.*, No. 02-1846, 92 Fed.Appx. 322, 325, 2003 WL 22977474, *3 (7th Cir. Dec. 11, 2003) (acknowledging that contract formation principles apply to determine whether a particular claim is covered by an arbitration clause and noting that the contract at issue contained a choice of law clause dictating the body of law to

---

[3]  Specifically, the Arbitration Clause states that such disputes "shall be resolved by arbitration administered by the office of the American Arbitration Association located in Oakland, County, Michigan, using the substantive laws of the state of Michigan, in accordance with its then current arbitration rules."  (DE #32-2.)

[4]  Neither party discusses in any depth which body of law will apply to the arbitrability issues presented in this case.  GRV cites to federal and Indiana law, while the Hoopes' cite to federal and Michigan law.  The Agreement, which was signed in the state of Ohio, contains a Michigan choice of law provision as does the Arbitration Clause.  Notwithstanding the references to various state laws (Indiana, Michigan, and Ohio), the Court notes that there is little difference among those laws as they pertain to this motion.  See *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) (in recognizing that there was some dispute as to which state law applied when construing an arbitration clause, the Seventh Circuit noted that "[w]e need not dwell on that problem, however, because we see no difference among the laws of those three states that would be dispositive.").  Here, all three states' laws acknowledge a strong policy favoring the enforcement of arbitration agreements and use ordinary principles of contract interpretation to resolve issues over the scope of those agreements.  See e.g. *Geneva-Roth Capital, Inc. v. Edwards,* 956 N.E.2d 1195, 1198-99 (Ind. Ct.App. 2011)*, petition for reh'g denied; Fromm v. MEEMIC Ins. Co.*, 690 N.W.2d 528, 530-31 (Mich. Ct.App. 2004); *Covington v. Lucia*, 784 N.E.2d 186, 189-90 (Ohio Ct.App. 2003).  In any event, to the extent that the laws do conflict, the Court notes that the law of the forum state would be applied and "Indiana choice of law doctrine favors contractual stipulations as to governing law."  *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002).

be utilized for such analysis).

Under Michigan law, arbitration is favored as a matter of public policy. *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409, 416 (Mich. Ct.App. 2007). When deciding a dispute related to the scope of the arbitration agreement, a court must look to the parties' agreement itself. See *Fromm v. MEEMIC Ins. Co.*, 690 N.W.2d 528, 530-31 (Mich. Ct.App. 2004). In doing so, a court must consider the following: (1) whether the agreement contains an arbitration clause; (2) whether the issue in dispute can "arguably" fall within that clause; and (3) whether the terms of the contract "expressly exempt" that particular dispute from being decided by an arbitrator. *Id*. When examining the contractual language, a court must "giv[e] it its ordinary and plain meaning if such would be apparent to a reader of the instrument," and when this meaning is not ambiguous, the contract should be enforced according to its terms. *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780-82 (Mich. 2003) (also noting that when contractual language is unambiguous, a court need not necessarily construe the contract against its drafter). "Thus, an unambiguous contractual provision is reflective of the parties' intent as a matter of law." *Quality Prod. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 259 (Mich. 2003). Finally, any doubt as to the scope of an arbitration clause is to be resolved in favor of arbitration, and courts should take care to

prevent dissection of a party's claims (i.e. segregating them "into categories of 'arbitrable sheep and judicially-triable goats'") whenever possible. *Detroit Auto. Inter-Ins. Exch. v. Reck*, 282 N.W.2d 292, 294 (Mich. Ct.App. 1979) (citation omitted).

In this case, it is undisputed that the Agreement contains an Arbitration Clause. There is no argument over contract formation, there are no claims of fraud, duress, or unconscionability, and the Hoopes' do not assert that they were unaware of the Arbitration Clause when they signed the Agreement. In fact, as noted above, it is clear from the record that the Hoopes' acknowledge that at least some of their claims against GRV must be submitted to an arbitrator pursuant to the Arbitration Clause; however, they argue that their post-sale claims, which, according to their Response, include "claims of negligent repair and breach of agreements unrelated to the purchase agreement," simply do not fall within the scope of the Arbitration Clause.

To determine whether these claims can "arguably" fall within the scope of the Arbitration Clause, the Court must look to the written language itself. The Arbitration Clause provides that any of the following controversies or claims shall be resolved by way of arbitration: (1) those arising out of or relating to the Agreement; (2) those arising out of or related to a breach of the Agreement; (3) those arising out of or related to the subject of the Agreement; and/or (4) those arising out of or related to the RV

-12-

sold pursuant to the Agreement.  The ordinary and plain meaning of this language establishes that, in addition to those claims arising out of or related to the Purchase Agreement itself, "any" (in other words all)[5] controversies or claims "arising out of *or* related to" (emphasis added) the RV sold to the Hoopes' by GRV are also subject to arbitration.  The use of the phrase "and/or" underscores this point--the Arbitration Clause takes care to distinguish claims related to the Agreement (including its potential breach and/or its subject) from claims related to the RV sold pursuant to it.  It is clear that the text of the Arbitration Clause is very broad and includes all claims that are substantially related to the RV in question.  The alleged negligent repairs performed by GRV, whether conducted pursuant to the Purchase Agreement, an "independent agreement," or "manufacturer warranties," are certainly "related to" the RV itself.  Indeed, the Arbitration Clause encompasses all claims brought forth by the Hoopes' against GRV because each and every one of these issues "arises out of" or "relates to" either the Agreement or the RV sold pursuant to it.

The Hoopes' attempts to distinguish these claims as somehow unrelated to the RV sold to them by GRV fall short; although they state that the Arbitration Clause "should be construed as not

---

[5]  See *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 242 (Mich. 2010) ("Any" is defined as "every; all.") (citing Random House Webster's College Dictionary (1997)).

applying to the services, which are the subject of the various claims in this case," they do not adequately explain why these specific claims should be parsed out of such a broad clause. As explained above, services performed on the RV by GRV's technicians are substantially related to the RV itself. As such, although the Hoopes' argue that the Arbitration Clause is ambiguous on its face, the Court disagrees; the clear language of the contract demonstrates the parties' intent to submit any claim between them arising out of or related to the Agreement and/or the RV itself to arbitration. Because the language of the Arbitration Clause is unambiguous, the Court need not look further. Thus, all of the claims against GRV in the Amended Complaint "arguably" fall within the scope of this broad Arbitration Clause. See e.g. *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409, 421 (Mich. Ct.App. 2007) ("In this case, the broad language of the arbitration clause--'any dispute or controversy arising out of or relating to' the agreement--vests the arbitrator with the authority to hear plaintiffs' tortious interference and defamation claims, even if they involve nonparties to the agreement."). See also *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (noting that the phrase "'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se" (citation omitted)); *Kiefer Specialty Flooring, Inc. v. Tarkett,*

-14-

*Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999) (describing broad arbitration clauses containing "relating to" as having an "expansive reach" and noting that "a party may not avoid . . . arbitration . . . by 'casting its complaint in tort.'" (citation omitted)).

This becomes even more clear when viewed in light of the fact that the Arbitration Clause here does not "expressly exempt" these types of claims from its reach. The parties could easily have provided that "post-sale" claims, service issues, or those related to "negligent repairs" of the RV are not to be subject to arbitration. They did not. Furthermore, Michigan courts have expressed a strong preference in favor of keeping all issues between parties in a single forum. See e.g. *In re Nestorovski Estate*, 769 N.W.2d 720, 735-36 (Mich. Ct.App. 2009). As the Hoopes' have already indicated that some of their claims against GRV will likely be submitted to arbitration, it logically follows that those "post-sale" claims, which are significantly related to both the Agreement and the RV itself, should also be submitted to the same arbitral forum. And, finally, to the extent that any doubts remain as to the scope of the Arbitration Clause, those doubts are resolved in favor of arbitration. See e.g. *Watts v. Polaczyk*, 619 N.W.2d 714, 719 (Mich. Ct.App. 2000) ("Any doubts about the arbitrability of an issue should be resolved in favor of

arbitration.")[6]

In sum, the Court has determined that all of the Hoopes'
claims against GRV described in the Amended Complaint fall within
the scope of the parties' Arbitration Clause.  As such, the Court
is satisfied that the Arbitration Clause was validly formed, that
it covers the disputes in question, and that it is legally
enforceable; thus, the Hoopes' claims against GRV as set forth in
the Amended Complaint are subject to arbitration.  See *Granite
Rock*, 130 S.Ct. at 2858.

Nonetheless, a procedural wrinkle arises based on the
Arbitration Clause's stipulation that arbitration shall be
"administered by the office of the American Arbitration Association
located in Oakland, County, Michigan."  Normally, when a party
seeks to "invoke an arbitration clause," the Seventh Circuit's
preferred method is to stay the litigation pending arbitration
rather than to dismiss it completely.  *Halim v. Great Gatsby's
Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008).  When an
arbitration agreement itself contains a forum selection clause,
however, and the suit has been brought in a district other than
that referenced by the parties in their agreement, dismissal is
more appropriate.  See *Faulkenberg v. CB Tax Franchise Sys., LP*,

---

[6] The parties present arguments as to the validity of negligent repair
claims under Michigan law.  However, as the Court has determined that the
Arbitration Clause is broad enough in scope to include such post-sale claims
(i.e. those that are substantially related to the RV sold to the Hoopes' by
GRV), the Court need not address those arguments; this task is left to the
arbitrator.

637 F.3d 801, 808 (7th Cir. 2011).  This is so because "a district court cannot compel arbitration outside the confines of its district." *Id*. (citation omitted).  Here, although GRV titles its motion as one to "Enforce Arbitration Clause," it does not substantively seek compelled arbitration from this Court but rather seeks dismissal outright.  It does so pursuant to a motion for summary judgment filed in lieu of an answer, and little activity has been docketed in the case to date.  Understanding that this Court does not have authority to compel arbitration in Michigan and noting the principles and facts outlined above, the Court finds it appropriate in this instance for the claims against GRV to be dismissed without prejudice.  In the event that GRV refuses to arbitrate these claims at some point in the future, the Hoopes' have the option of filing their own motion to compel arbitration in the appropriate forum.  The claims against Gulf Stream remain pending before this Court.

<u>CONCLUSION</u>

　　　　For the reasons set forth above, the motion is **GRANTED** in part and **DENIED** in part.  To the extent that Defendant General RV Center, Inc. asks this Court to compel arbitration, that request is **DENIED**.  However, the motion is **GRANTED** to the extent that Defendant General RV Center, Inc. seeks dismissal of the claims against it as set forth in the Amended Complaint.  Accordingly,

-17-

Defendant General RV Center, Inc. is **DISMISSED** from this lawsuit. The claims against Defendant Gulf Stream Coach, Inc. remain pending before this Court.


**DATED: March 26, 2012**          **/s/RUDY LOZANO, Judge**
                                   **United State District Court**