# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| NATHAN HOOPES and | ) | |
| DEVON HOOPES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | NO. 1:10-CV-365 |
| vs. | ) | |
| | ) | |
| GULF STREAM COACH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Partial Summary Judgment, filed by Defendant Gulf Stream Coach, Inc. on December 16, 2013. (DE #64.) For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Plaintiffs' Ohio Lemon Law Act, Ohio Consumer Sales Practices Act, Indiana Lemon Law Act, state law negligence claims, and Plaintiffs' alternative prayer for relief on the basis of revocation and/or rescission of the contract. However, the motion is **DENIED** as to Plaintiffs' Indiana Deceptive Consumer Sales Act claim.

## PROCEDURAL HISTORY

This case was originally brought by Plaintiffs, Nathan and Devon Hoopes, (collectively "Plaintiffs") against two Defendants,

1

Gulf Stream Coach, Inc. ("Gulf Stream") and General RV Center, Inc. ("GRV"). GRV filed a Motion for Summary Judgment to Enforce Arbitration Clause on May 16, 2011. This Court denied GRV's motion to compel arbitration but granted GRV's motion seeking dismissal of the claims against it as set forth in Plaintiffs' amended complaint.

Gulf Stream filed the instant Motion for Summary Judgment on December 16, 2013. Plaintiffs filed a response to Defendant's Motion for Partial Summary Judgment on January 13, 2014. Defendant then filed a reply to Plaintiffs' response on February 3, 2014. Thus, the instant motion is now fully briefed and ripe for adjudication.

FACTS

For purposes of this motion, the material facts are largely undisputed.[1] On January 23, 2010, Plaintiffs, who reside together in Ohio, purchased a Gulf Stream Super Nova recreational vehicle with a VIN of 1HTMPAFM29H542344 (the "RV"). Nathan Hoopes, a high school graduate, owns and operates an aluminum smelting company. He attended a college of technology and took classes in electrical and mechanical engineering. Devon Hoopes is a manager of administration for Mercy Medical Center. She graduated from

---

[1] Because the facts in this case are largely undisputed, albeit not their legal significance, the Court will provide citations only where directly quoting the evidence or where the parties dispute the facts.

college with a bachelor's degree in business.  The RV at the center of this dispute was manufactured by Gulf Stream, an Indiana corporation, in Indiana and sold to Plaintiffs by GRV, an independent, authorized dealer of Gulf Stream vehicles, in Ohio for a total taxable price of $132,004.33 and a total delivered price of $139,645.11.[2]  GRV originally bought the RV from Gulf Stream for $129,880.00.

At the time of purchase, Plaintiffs and GRV entered into a Purchase Agreement, which was signed by Plaintiffs and a representative of GRV (the "Purchase Agreement").  The Purchase Agreement contains a choice of law provision which states, in part:

> THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN [GRV] AND PURCHASER.  NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT AND NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN HAVE BEEN MADE, WHICH ARE NOT CONTAINED ON THIS DOCUMENT.  BY SIGNING BELOW PURCHASER ACKNOWLEDGES THAT PURCHASER HAS RECEIVED A COPY OF THIS AGREEMENT AND THAT PURCHASER HAS READ AND UNDERSTANDS THE TERMS OF THIS AGREEMENT, INCLUDING THOSE PRINTED ON THE REVERSE SIDE, WHICH INCLUDE AN ARBITRATION AGREEMENT, AN "AS IS" CLAUSE, AND A CHOICE OF LAW PROVISION INDICATING THAT MICHIGAN LAW WILL APPLY TO ANY POTENTIAL DISPUTES.

(Purchase Agreement, DE #67-9, p. 2.) (capitalization in original).

Plaintiffs' signatures are recorded directly below this language.  The Court previously determined that the substantive law of

---

[2]  GRV is a Michigan corporation but is authorized to do business in Ohio and maintains a retail facility there.

Michigan applied to the claims between Plaintiffs and GRV. (See DE #35, pp. 9-11.)

According to Plaintiffs, at the time of purchase and "near the end of the paperwork signing process," the GRV representative indicated a written Gulf Stream Motorized Limited Warranty (the "Limited Warranty") existed but would not be provided to Plaintiffs until they returned to trade in their old vehicle. (Aff. of Nathan Hoopes, ¶ 7, DE #70, p. 23.) Plaintiffs state that the GRV representative discussed some details and explained that the Limited Warranty did not cover the chassis or any inside appliances and urged them to purchase an extended warranty to cover the entire RV. (*Id*.) Plaintiffs agreed to do so. (*Id*.) Plaintiffs contend that they did not see the actual Limited Warranty itself or any information pertaining to it on the day they purchased the RV. (*Id*. at ¶¶ 4-7, pp. 23.) Despite this contention, however, the signed Purchase Agreement contains the following language:

> PURCHASER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THIS RV, BUT THAT THESE WARRANTIES ARE OFFERED BY THE MANUFACTURERS OF THE RV, IT'S (sic) COMPONENTS AND/OR IT'S (sic) APPLIANCES. THESE WARRANTIES HAVE BEEN PROVIDED TO PURCHASER AND PURCHASER HAS READ AND UNDERSTANDS THESE WARRANTIES. PURCHASER UNDERSTANDS THAT DEALER OFFERS NO WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV.

(Purchase Agreement, DE #67-9, p. 3.) (capitalization in original).

It is undisputed that the Limited Warranty was not actually signed by Plaintiffs until January 30, 2010, when they returned to GRV to drop off their old vehicle for trade-in. According to Plaintiffs, they were standing by GRV's popcorn machine when the same GRV representative who initiated the sales paperwork approached them, made some "general talk" about the RV being ready for pick up in a few days, and asked them to sign the Limited Warranty. (Aff. of Nathan Hoopes, ¶ 11, DE #70, p. 24.) "He put the warranty paper down on the table next to the popcorn machine stand and said to sign right here and pointed to where to sign, so we did." (*Id.*) Both Plaintiffs' signatures are recorded on the signature lines located directly below the choice of law provision which states:

> Exclusive jurisdiction for deciding any claims, demands or causes of action for defects or representations of any nature or damages due from such defects or representations shall be in the courts in the State of Manufacture. The laws applicable to any litigation, dispute, mediation, arbitration or any claim whatsoever arising from the sale, purchase, or use of the recreational vehicle shall be those of the State of Manufacture. The State of Manufacture of the recreational vehicle is Indiana.
>
> . . .
>
> **I/WE HEREBY ACKNOWLEDGE THAT I/WE HAVE READ AND RECEIVED THIS LIMITED WARRANTY PRIOR TO ENTERING INTO ANY CONTRACT TO PURCHASE MY/OUR GULF STREAM RECREATIONAL VEHICLE AND AGREE TO ABIDE BY ALL OF ITS TERMS AND PROVISIONS**

**INCLUDING, BUT NOT LIMITED TO, THE DISCLAIMER OF ALL OTHER EXPRESS AND IMPLIED WARRANTIES, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, TO THE EXTENT APPLICABLE LAW ALLOWS, AND THE PROVISIONS HEREOF PROVIDING THAT THE EXCLUSIVE JURISDICTION FOR ANY CLAIMS WHATSOEVER SHALL BE IN THE COURTS IN THE STATE OF MANUFACTURE AND THAT THE APPLICABLE LAW SHALL BE THE LAW OF THE STATE OF MANUFACTURE.**

(Limited Warranty, DE #67-10, p. 4.) (capitalization and bold in original). In a section entitled "Important Facts," the Limited Warranty clarifies that the covered RV was sold to an "independent dealer, and not an agent of Gulf Stream, for resale in the ordinary course of the dealer's business," that the initial Purchase Agreement is "solely with the dealer, not Gulf Stream," that "Gulf Stream does not participate in retail sales or retail contracts," and that "[a]uthorized dealers and service centers are independent contractors and independently owned businesses." (*Id*. at p. 4.) The Limited Warranty provides a one (1) year warranty "against defects in Gulf Stream materials and/or workmanship in the construction of the recreational vehicle" and a two (2) year warranty "against structural defects in Gulf Stream materials and/or workmanship in the construction of the floors, walls and roof." (*Id*. at p. 3.) The Limited Warranty indicates that Gulf Stream will arrange for repair or replacement of defective materials and that it is "ready, willing and able to make every effort for a quick response." (*Id*.) The RV's slide-out room is a

component covered by the Limited Warranty. After the Limited Warranty was signed, the GRV representative took the paperwork with him and Plaintiffs left. Plaintiffs took possession of their new RV a few days later, which was about ten days after initially signing the Purchase Agreement.[3] They then discovered the Limited Warranty inside of the RV along with the Owner Manual and other associated booklets.

Between the time Plaintiffs took possession of the RV in February of 2010 through July of 2010, they allege to have experienced various issues with the RV including toilet and shower leaks and problems with the beds, bunks, air conditioning units, vents, television, power inverter, and slide-out room. (Aff. of Nathan Hoopes, ¶¶ 19, 29, DE #70, pp. 26-27; GRV Work Orders, DE #70, pp. 29-40; Letter of Nathan Hoopes, DE #70, p. 45.) Plaintiffs brought the RV to GRV several times to be repaired pursuant to the Limited Warranty. The repairs by GRV were ultimately unsuccessful. On June 15, 2010, Plaintiffs' attorney sent a letter to Tony Suddon, Gulf Stream's director of consumer affairs, which was received by Gulf Stream within a week of the date of mailing. The letter states, in part:

> [Plaintiffs'] vehicle has experienced continuing defects with the full-wall slideout on the vehicle, which [GRV] has been unable to repair or correct after three repair attempts.

_____

[3] No particular date is provided by the parties, but ten days after January 23, 2010, was February 2, 2010.

> I am enclosing copies of repair invoices
> describing the defect and repair attempts.
> The full-wall slideout is covered by your
> written warranty. . . . [Plaintiffs'] elect to
> return the vehicle [to GRV] and receive a
> refund of the full purchase price, all
> indidental damages, including but not limited
> to, any fees charged by the lender for making
> or cancelling the loan, interest, and
> equipment installation charges, and expenses
> incurred through result of the nonconformity.
> Please advise, whether Gulf Stream Coach
> intends to refund the full purchase price and
> pay related incidental and other expenses as
> required by law. I will obtain and provide
> documentation of the incidental and other
> expenses. Please feel free to call and
> discuss this matter.

(June Attorney Letter, DE #70, p. 42.) Copies of the GRV work orders and the Purchase Agreement were included with the letter. On August 13, 2010, Plaintiffs' attorney sent another letter to Suddon providing "additional notice of defects in the vehicle" that included a comprehensive list of the alleged defects as authored by Nathan Hoopes. (August Attorney Letter, DE #70, p. 47; Letter of Nathan Hoopes, DE #70, p. 45.) After receipt of the letters, Gulf Stream did not offer in writing to remedy or "adjust or modify" any terms of the transaction. (Aff. of Nathan Hoopes, ¶ 30, DE #70, p. 28.)

Plaintiffs filed a multi-count Complaint against both Gulf Stream and GRV on October 19, 2010. GRV was subsequently dismissed as a defendant in the case on March 26, 2012, because the Court found that the claims against it were subject to arbitration. Only

the claims against Gulf Stream are currently pending before this
Court.

DISCUSSION

Summary judgment must be granted when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine
dispute of material fact exists when "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Not
every dispute between the parties makes summary judgment
inappropriate; "[o]nly disputes over facts that might affect the
outcome of the suit under the governing law will properly preclude
the entry of summary judgment."  *Id.*  In determining whether
summary judgment is appropriate, the deciding court must construe
all facts in the light most favorable to the non-moving party and
draw all reasonable inferences in that party's favor. *Ogden v.
Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).  "However, our favor
toward the nonmoving party does not extend to drawing inferences
that are supported by only speculation or conjecture." *Fitzgerald
v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v.
C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion
may not rely on allegations or denials in her own pleading, but

rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the non-moving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

*Choice of Law*

The parties' initial disagreement centers around the choice of law provision found within the Limited Warranty. Gulf Stream maintains that the contractual choice of law provision mandates the application of Indiana substantive law to this dispute. Plaintiffs, on the other hand, maintain that the choice of law provision is unconscionable, unenforceable and should be disregarded in favor of Ohio law.

Indiana's choice of law rules shall apply to determine this preliminary issue. See *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("Because plaintiffs' claims rest on state law, the choice-of-law rules come from the state in which the federal court sits."); see also *Kentucky Nat. Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010) ("Choosing the appropriate state substantive law is a decision to be made by the court of the state in which the action is pending.") In Indiana, there is a presumption that parties are free to choose

the body of law that will be applicable to their agreements.  See *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) ("Indiana choice of law doctrine favors contractual stipulations as to governing law."); *Hoehn v. Hoehn*, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999) ("Parties may generally choose the law that will govern their agreements.").  In an effort to overcome that presumption, Plaintiffs argue that the choice of law provision within the Limited Warranty is "in the nature of" an unconscionable adhesion contract.

An adhesion contract is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004) (citations omitted).  In Indiana, adhesion contracts are not automatically deemed unconscionable. *Id*. "Rather, a contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms." *Id*. (citations omitted).  Disparity in bargaining power alone is not enough make an adhesion contract unconscionable; there needs to be a showing of unwillingness or unawareness. *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 235 (Ind. Ct. App. 2013).  To determine whether the contract was signed unwillingly or without knowledge, the court must look to

the circumstances at the time the contract was executed. *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.*, 412 N.E.2d 129, 131 (Ind. Ct. App. 1980). Even when one party is later placed at a distinct advantage, courts have been reluctant to find adhesion contracts unenforceable. *Id*. Instead, an unconscionable adhesion contract is one that "no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept." *Sanford*, 813 N.E.2d at 417.

Whether a contract is one of adhesion or not, Indiana law requires that parties agree to all essential terms, and "a person is presumed to understand and assent to the terms of the contracts he signs." *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind. Ct. App. 2003) (citations omitted). "Generally, parties are obligated to know the terms of the agreement they are signing, and cannot avoid their obligations under the agreement due to a failure to read it." *Weinreb*, 993 N.E.2d at 232 (*citing Park 100 Investors, Inc. v. Kartes*, 650 N.E.2d 347, 349 (Ind. Ct. App. 1995)). However, if misrepresentation or fraud is employed, the signing party need not be bound by the terms of the agreement. *Park 110 Investors, Inc.*, 650 N.E.2d at 349.

Here, Plaintiffs argue that the choice of law provision found within the Limited Warranty was not seen, bargained for, or freely negotiated prior to the signing of the Purchase Agreement so imposing it would "work a fraud and overreaching" upon Plaintiffs

to deprive them of legal rights that existed "automatically" as of the time of sale and would violate public policy.  They declare that the choice of law provision is thus unconscionable and unenforceable.  The Court disagrees.

On the date of purchase, Plaintiffs had notice that a Limited Warranty existed to cover the RV.  They were orally advised of some of its terms and accepted an offer to purchase an additional warranty to supplement the Limited Warranty.  Plaintiffs signed the Purchase Agreement that included a section in all capital letters referencing the Limited Warranty and stating that "THESE WARRANTIES HAVE BEEN PROVIDED TO PURCHASER AND PURCHASER HAS READ AND UNDERSTANDS THESE WARRANTIES, EXPRESS OR IMPLIED, ON THIS RV." There is no indication that they unwillingly signed the Purchase Agreement, were unaware of its specific terms, or were under duress at the time of signing.

More importantly, prior to accepting delivery of the RV, Plaintiffs signed the Limited Warranty itself, stating in writing that they "**READ**" and "**AGREE[D] TO ABIDE BY ALL OF ITS TERMS AND PROVISIONS INCLUDING [THE INDIANA CHOICE OF LAW PROVISION].**" Nothing in the record indicates that, at the time the Limited Warranty was signed, Plaintiffs, who are both educated business professionals, did not have an ample opportunity to read and understand those terms.  In fact, the record shows that Plaintiffs were simply standing by a popcorn machine at GRV making small talk

with the sales representative when they were given the Limited Warranty and asked to sign it. There is no indication that Plaintiffs were under duress at that time or that they were forced to sign the Limited Warranty unwillingly. There is no evidence that fraud or misrepresentation was employed when Plaintiffs were presented with the written document itself. In fact, there is no evidence in the record to indicate that, at the time of signing, Plaintiffs found any of the Limited Warranty's terms unreasonable, oppressive, or objectionable whatsoever. They were simply asked to sign the Limited Warranty, and they did. Plaintiffs cannot declare the choice of law provision unenforceable after-the-fact based on "fraud and overreaching," an unwillingness to sign, or an unawareness of its essential terms when there is no evidence in the record to show that those things existed at the time of its execution. Any alleged failure by Plaintiffs to read the terms of the Limited Warranty closely is not the fault of Gulf Stream. See *Weinreb*, 993 N.E.2d at 232 (parties to a contract "cannot avoid their obligations under the agreement due to a failure to read it"); *Castleton Health Care Ctr., LLC*, 813 N.E.2d at 418 (finding that plaintiff did not sign an arbitration clause unwillingly or without legal knowledge even though plaintiff felt "rushed" by chaotic events surrounding her mother's admission into a care facility because, while plaintiff admitted that she did not read the entire contract, she was not precluded from doing so); see also

*Dan Purvis Drugs, Inc*., 412 N.E.2d at 131 (courts must look to the circumstances at the time the contract was executed to determine whether it was signed unwillingly or without knowledge). Therefore, the Limited Warranty is a standardized contract drafted by Gulf Stream, but it is not unconscionable. See *Weinreb*, 993 N.E.2d at 235 (disparity in bargaining power alone is not enough to make an adhesion contract unconscionable; there needs to be a showing of unwillingness or unawareness).

Plaintiffs also argue that the choice of law provision is unconscionable and against public policy because it takes away rights based on Ohio law that "existed at the date of sale." However, each agreement contains its own separate choice of law provision, providing for Michigan and Indiana law respectively, and the terms of both the Purchase Agreement[4] and the Limited Warranty[5] make it clear that Gulf Stream had no part in creating or executing the Purchase Agreement. As noted in detail above, there is nothing in the record to indicate that Plaintiffs signed the Limited Warranty itself, which contains an Indiana choice of law provision, without legal knowledge, unwillingly, or under duress. The fact

---

[4] For example, the Purchase Agreement notes that it "contains the entire understanding between [GRV] and Purchaser" and that certain warranties may exist but that they are "offered by the manufacturers" and are not offered by GRV.

[5] For example, the Limited Warranty explains that GRV is an "independent dealer" and not an agent of Gulf Stream and that the Purchase Agreement is "solely with the dealer, not Gulf Stream" because "Gulf Stream does not participate in retail sales or retail contracts."

that Plaintiffs later discovered that Ohio law may be more favorable to their position[6] is of no consequence.

Finally, Plaintiffs argue that the choice of law provision is unenforceable and against public policy because Gulf Stream failed to comply with its duties as required by federal law under the Magnuson-Moss Warranty Act ("MMWA"). The MMWA is a "remedial statute designed to protect consumers from deceptive warranty practices." *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 780 (7th Cir. 2011) (citing *Skelton v. General Motors Corp.*, 660 F.2d 311, 313 (7th Cir. 1981)). The MMWA does not mandate that sellers and manufacturers offer warranties, but if they do chose to do so, any "written warranty" must comply with the MMWA's requirements. *Skelton*, 660 F.2d at 314. For example, a warrantor must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a). Additionally, one of the implementing regulations of the MMWA also places duties upon sellers and warrantors regarding pre-sale availability of written warranty terms. 16 C.F.R. § 702.3. A seller, defined as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product," is responsible for making a written warranty available for a prospective buyer's inspection by:

_____

[6] The Ohio Lemon Law Act covers recreational vehicles, while the Indiana Lemon Law Act does not. See O.R.C. § 1345.71; Ind. Code § 24-5-13-5.

(1) Displaying it in close proximity to the warranted product, or

(2) Furnishing it upon request prior to sale and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request.

16 C.F.R. § 702.1(e); 16 C.F.R. § 702.3(a). On the other hand, a warrantor, defined as "any supplier or other person who gives or offers to give a written warranty," is tasked, in relevant part, with:

(i) Provid[ing] sellers with warranty materials necessary for such sellers to comply with the requirements set forth in paragraph (a) of this section, by the use of one or more by the following means:

(A) Providing a copy of the written warranty with every warranted consumer product; and/or

(B) Providing a tag, sign, sticker, label, decal or other attachment to the product, which contains the full text of the written warranty; and/or

(C) Printing on or otherwise attaching the text of the written warranty to the package, carton, or other container if that package, carton or other container is normally used for display purposes. If the warrantor elects this option a copy of the written warranty must also accompany the warranted product; and/or

(D) Providing a notice, sign, or poster disclosing the text of a consumer product warranty. If the

> warrantor elects this option, a copy
> of the written warranty must also
> accompany each warranted product.

16 C.F.R. § 702.1(d); 16 C.F.R. § 702.3(b).

In *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464 (S.D.N.Y. 2010), a district court recognized the different duties placed upon sellers and warrantors regarding pre-sale availability of written warranty terms pursuant to the MMWA. The buyer in *Kraft* purchased a boat manufactured by the defendant from an authorized dealer/seller. *Id.* at 468. At the time the purchase agreement was signed, the dealer/seller failed to provide the buyer with the written manufacturer's warranty. *Id.* at 469-70. In fact, the buyer did not receive and sign a copy of the manufacturer's warranty until the boat was delivered over seven months later. *Id.* Upon discovery of the boat's many problems, which developed almost immediately upon delivery, the buyer brought an action in federal court under theories of breach of warranty, violation of the MMWA, and violation of New York's General Business Law. *Id.* at 468-69. In part, the buyer argued that because the dealer/seller failed to provide a copy of the manufacturer's warranty prior to the signing of the purchase agreement, it violated the MMWA and rendered the limitations in the manufacturer's warranty unconscionable and unenforceable. *Id.* at 477-78.

The court first found that the buyer's allegations that she did not receive a copy of the manufacturer's warranty at the time

of sale were undercut by the fact that she later signed the warranty itself acknowledging that she had read it, understood it, and agreed to its terms. *Id*. at 478. The court further noted that there was no evidence that the buyer objected to those terms upon receipt. *Id*. Looking to the implementing regulations described in 16 C.F.R. § 702.3(a) & (b), the court then found there was no evidence that the manufacturer neglected to live up to its obligations under the MMWA despite the dealer/seller's failure to provide the buyer with the warranty at the time of sale. *Id*. The court concluded that the manufacturer's warranty was not rendered unconscionable by the dealer/seller's alleged violations of the MMWA. *Id*.

The instant case is analogous to *Kraft*, and the Court finds its reasoning persuasive. Here, Gulf Stream (the "warrantor") was responsible for providing GRV (the "seller") with pre-sale warranty materials. According to the implementing regulations of the MMWA, this could have been accomplished in a number of ways, including providing a copy of the Limited Warranty with the RV itself or providing GRV with a tag, sign, sticker, sign, notice, poster, etc. GRV, on the other hand, was responsible for making the Limited Warranty available for Plaintiffs' inspection by displaying it, furnishing it upon request, or placing signs regarding the Limited Warranty in prominent locations. While Plaintiffs argue at length that they did not receive or see any pre-sale warranty materials

19

publicly posted or on display anywhere at GRV prior to signing the
Purchase Agreement, there is no evidence in the record to suggest
that Gulf Stream failed in any of *its* pre-sale warranty duties.

The evidence in the record establishes that, on the date of
sale, the GRV sales representative advised Plaintiffs that the Gulf
Stream Limited Warranty existed, provided them with some specifics
of what the warranty covered, encouraged them to buy an extended
warranty for additional coverage, and told Plaintiffs that a copy
of the Limited Warranty would be available for signature when they
brought in their old vehicle for trade-in.  It is undisputed that
Plaintiffs did indeed see and sign a copy of the Limited Warranty
on January 30, 2010, the day they returned to GRV to drop off their
trade-in.  Plaintiffs stated in writing that they read the Limited
Warranty and agreed to its terms.  As explained in detail above,
there is no indication that Plaintiffs objected to any of the terms
contained within the Limited Warranty.  Finally, it is undisputed
that a copy of the Limited Warranty was located inside of the RV
when Plaintiffs took delivery of it.  Despite GRV's actions and
alleged failures, there is no evidence in the record to suggest
that Gulf Stream violated the pre-sale warranty requirements of the
MMWA, and, therefore, the choice of law provision was not rendered
unconscionable.  See *Kraft*, 715 F.Supp.2d at 478 ("The Court is
also not persuaded that [the dealer/seller's] failure to provide a
copy of [the manufacturer's] limited warranty to Plaintiff at the

time of purchase, rather than at the time of delivery, renders the limitations contained therein unconscionable.")

Plaintiffs have not provided evidence sufficient to show that the Indiana choice of law provision contained with the Limited Warranty is unconscionable, unenforceable, or otherwise invalid; thus, the Court concludes that Indiana substantive law governs.

*Ohio Lemon Law Act & Ohio Consumer Sales Practices Act*

Because the Court has determined that Indiana substantive law applies to Plaintiffs' state law claims brought against Gulf Stream, the claims requesting relief pursuant to the Ohio Lemon Law Act (O.R.C. §§ 1345.71-1345.78) and the Ohio Consumer Sales Practices Act (O.R.C. §§ 1345.01-1345.09) are dismissed. Gulf Stream's motion for summary judgment as to these claims is **GRANTED.**

*Indiana Lemon Law Act*

Plaintiffs have agreed to withdraw their Indiana Lemon Law Act claim (see DE #68, p. 14). Accordingly, Gulf Stream's motion for summary judgment as to Plaintiffs' Indiana Lemon Law Act claim is **GRANTED.**

*Indiana Negligence and the Economic Loss Doctrine*

Relying on the economic loss doctrine, Gulf Stream argues that Plaintiffs' claims of negligent design, testing, inspection,

manufacture, and repair of the RV are not actionable under Indiana law because it has not been alleged that the RV caused any personal injury or damage to other property.  Plaintiffs disagree with Gulf Stream's analysis of the law.

In Indiana, "where a negligence claim is based upon the failure of a product to perform as expected and the plaintiff suffers only economic damages, no recovery may be had in negligence; instead, the buyer's remedy lies in contract." *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 728 (Ind. 2010) (citation omitted).  In other words:

> Indiana law under the Products Liability Act and under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.

*Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005). The economic loss doctrine only comes into play where a plaintiff has suffered "pure economic loss" which has been defined as "pecuniary harm not resulting from an injury to the plaintiff's person or property." *Indianapolis-Marion Cnty. Pub. Library,* 929 N.E.2d 722 at 731.  The Indiana Supreme Court has acknowledged the applicability of the doctrine to suppliers, engineers, and design

professionals of defective products or services pursuant to a contract. *Id*. at 735. The "default position in Indiana is that in general, there is no liability in tort for pure economic loss caused unintentionally." *Id*. at 736.

Plaintiffs contend that the economic loss doctrine was abrogated by *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005). In Plaintiffs' view, the "ruling abrogating the economic loss doctrine applies to negligence claims for damage to the product, as well as to implied warranty of merchant liability claims." Plaintiffs are mistaken. The economic loss doctrine was not abolished by *Hyundai Motor*. Rather, the issue in *Hyundai Motor* revolved around whether privity between a buyer and a manufacturer was required for a breach of implied warranty claim. *Hyundai Motor*, 822 N.E.2d at 951. The Indiana Supreme Court held that "Indiana law does not require vertical privity between a consumer and a manufacturer as a condition to a claim by the consumer against the manufacturer for breach of implied warranty of merchantability." *Id*. at 959.[7] The *Hyundai Motor* ruling in no way invalidated the economic loss doctrine as it applies generally to Indiana law; in fact, citing to the *Martin Rispins* case, the Indiana Supreme Court noted that:

---

[7] In so holding, the Indiana Supreme Court partially abrogated *Martin Rispins & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078 (Ind. 1993), recognizing that the often cited footnote number two in that case, which states that privity between sellers and buyers is required in implied warranty of merchantability claims, was dicta and deserved reconsideration. *Hyundai Motor*, 822 N.E.2d at 953-54.

> [i]n Indiana, the economic loss rule applies
> to bar recovery in tort 'where a negligence
> claim is based upon the failure of a product
> to perform as expected and the plaintiff
> suffers only economic damages.' Possibly
> because of the economic loss rule, [the
> plaintiff] did not raise a negligence claim
> here.

*Id*. at 958 (internal citation omitted).

Gulf Stream is correct that the economic loss doctrine is applicable as a defense against Plaintiffs' negligence claims. To trigger the doctrine, there must be purely economic loss claimed. In this case there is nothing to indicate, nor do Plaintiffs contend, that there was any injury done to their persons or any other property. The only loss claimed is related to the RV itself, so contract law, not tort law, applies. Therefore, Gulf Stream's motion for summary judgment as to Plaintiffs' negligence claims is **GRANTED**.

*Indiana Deceptive Consumer Sales Act*

Gulf Stream argues that summary judgment should be granted on Plaintiffs' Indiana Deceptive Consumer Sales Act ("IDCSA") claims because Plaintiffs did not provide them with effective notice as required by the IDCSA and because a specific violation the IDCSA cannot be shown. Plaintiffs, on the other hand, argue that the notice provided to Gulf Stream was adequate and that Gulf Stream's various actions and refusals show intentional failures which

violate the IDCSA.

The IDCSA is a remedial statute designed to "provide[]
remedies to consumers . . . for practices that the General Assembly
deemed deceptive in consumer transactions." *Banks v. Jamison*, 12
N.E.3d 968, 974, n. 6 (Ind. Ct. App. 2014) (citing *McKinney v.
State*, 693 N.E.2d 65, 67 (Ind. 1998)). The IDCSA is to be
liberally construed to protect the consumer. *See Kesling v. Hubler
Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013). If a supplier[8]
engages in "deceptive acts," a consumer may file suit pursuant to
the IDCSA. *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 646
(Ind. Ct. App. 2004). A supplier's deceptive acts, which can be
made orally, in writing, or by electronic communication, include,
but are not limited to, the following:

> (1) That such subject of a consumer
> transaction has sponsorship, approval,
> performance, characteristics, accessories,
> uses, or benefits it does not have which the
> supplier knows or should reasonably know it
> does not have.
>
> (2) That such subject of a consumer
> transaction is of a particular standard,
> quality, grade, style, or model, if it is not
> and if the supplier knows or should reasonably
> know that it is not.
>
> . . .
>
> (8) That such consumer transaction involves or

---

[8] Supplier is defined as "[a] seller, lessor, assignor, or other person who
regularly engages in or solicits consumer transactions . . . . The term
includes a *manufacturer*, wholesaler, or retailer, whether or not the person
deals directly with the consumer." Ind. Code § 24-5-0.5-2(a)(3)(A) (2007)
(emphasis added).

> does not involve a warranty, a disclaimer of
> warranties, or other rights, remedies, or
> obligations, if the representation is false
> and if the supplier knows or should reasonably
> know that the representation is false.

Ind. Code § 24-5-0.5-3(a) (2009).[9]  A deceptive act is actionable

if it is either "uncured" or "incurable."  *Perry*, 814 N.E.2d at

647.  An uncured deceptive act is one:

> (A) with respect to which a consumer who has
> been damaged by such act has given notice to
> the supplier under section 5(a) of this
> chapter; and
>
> (B) either:
>
>> (i) no offer to cure has been made
>> to such consumer within thirty (30)
>> days after such notice; or
>>
>> (ii) the act has not been cured as
>> to such consumer within a reasonable
>> time after the consumer's acceptance
>> of the offer to cure.

Ind. Code § 24-5-0.5-2(a)(7) (2007).  An incurable deceptive act,

on the other hand, is one that is "done by a supplier as part of a

scheme, artifice, or device with intent to defraud or mislead."

Ind. Code § 24-5-0.5-2(a)(8) (2007).  "Intent to defraud or mislead

is thus clearly an element of an incurable deceptive act" but is

---

[9]  While neither party addresses the issue (nor even cites to which version of
the code they are relying on), the Court will analyze the claims under the
version of the IDCSA in effect at the time of the incidents giving rise to the
litigation and the time the suit was commenced.  *See Miller v. LaSalle Bank
Nat. Ass'n*, 595 F.3d 782, 787 (7th Cir. 2010) ("In Indiana, absent 'strong and
compelling' reasons, statutes will not be interpreted to apply
retroactively.")

not required to prove an uncured deceptive act. *Perry*, 814 N.E.2d at 647 (citing *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998)). In general, an action may not be brought pursuant to the IDCSA based on an uncured act unless:

> the consumer bringing the action shall have given notice in writing to the supplier within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act.

Ind. Code § 24-5-0.5-5(a). The Indiana Court of Appeals has stressed the importance of compliance with the IDCSA's notice requirements, pointing out that it "gives the supplier an opportunity to review the facts and the law involved so that he can determine if the requested relief should be granted or denied." *McCormick Piano & Organ Co., Inc. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980). However, the notice requirement does not mandate that the deceptive acts be stated with "absolute precision" and is sufficient as long as all of the pertinent information is presented. *Captain & Co., Inc. v. Stenberg*, 505 N.E.2d 88, 95-96 (Ind. Ct. App. 1987).

Here, Gulf Stream first argues that summary judgment should be granted on the ground that the requisite notice was not provided to

27

them because Plaintiffs' pre-suit correspondence did not fully state the nature of the alleged deceptive act, did not provide an opportunity to cure, and did not address actual damages. The Court disagrees. Plaintiffs have submitted evidence that their attorney sent a letter to Gulf Stream's director of consumer affairs on June 15, 2010, which was received by Gulf Stream within a week of that date. The correspondence included a copy of the Purchase Agreement as well as copies of GRV's work orders describing the defects and repeated repair attempts. Although Gulf Stream argues that the letter did not address the "litany of alleged defects" now claimed, the GRV work orders show Plaintiffs' numerous difficulties with the RV (i.e. broken television brackets, leaks, broken latches, water heater issues, toilet issues, and various problems with the slide-out room) and the attempted corrections. The June 15, 2010, letter specifically states that the RV "has experienced continuing defects with the full-wall slideout . . . which [GRV] has been unable to repair or correct after three repair attempts. The full-wall slideout is covered by your written warranty." The letter also requests a complete refund of the purchase price, which was detailed on the Purchase Agreement, plus incidental damages, and it concludes by asking that Gulf Stream respond by indicating whether it intends to pay the requested amount. There is no evidence in the record that Gulf Stream made any offer to cure within thirty

days of the receipt of the letter.[10]  Plaintiffs did not file suit until roughly four months after the first letter was sent.

Viewed in the light most favorable to Plaintiffs, although the June 15, 2010, letter and attachments may not state the deceptive acts with exact precision, it was sufficient to put Gulf Stream on notice as required by the IDCSA.  The correspondence references specific defects and performance issues with the slide-out room (among other allegedly defective characteristics and accessories of the RV) coupled with an inability and/or unwillingness to remedy the issues as promised by Gulf Stream pursuant to the Limited Warranty.  It refers to Plaintiffs' position that they were damaged by at least the purchase price of the RV, and it asks Gulf Stream to respond.  The letter sufficiently apprised Gulf Stream that Plaintiffs relied on and were damaged by certain representations that were allegedly deceptive (i.e. Gulf Streams Limited Warranty and the RV's lack of  performance, characteristics, accessories, uses, benefits, and/or quality).  See e.g. *Perry*, 814 N.E.2d at 646-47 (noting that "if a good or service, such as [an RV], turns out to be other than as represented, the consumer may invoke the [IDCSA] by giving notice of the problem to the supplier" and analyzing the defendant's deceptive act of representing that the RV

---

[10]  Plaintiffs' attorney sent an additional letter to Gulf Stream on August 13, 2010, which provided "additional notice of defects in the vehicle" and included a lengthy list of issues written by Plaintiff Nathan Hoopes.  There is no evidence in the record that Gulf Stream made any offer to cure following receipt of the second letter.

in question had "performance, characteristics, accessories, uses, or benefits it [did] not have which the supplier [knew] or should reasonably [have] know[n] it does not have); see also Ind. Code §§ 24-5-0.5-3(a)(1)-(2) & (8) (2009). Because there is evidence in the record to suggest that Plaintiffs adequately notified Gulf Stream under the requirements of the IDCSA, summary judgment is inappropriate based on the issue of lack of notice.

Gulf Stream next argues that certain subsections of Plaintiffs' complaint (namely those dealing with the MMWA and Gulf Stream's refusal to accept return of or "buy back" the RV) cannot constitute a violation of the IDCSA. Plaintiffs point out that their complaint merely lists several actions by Gulf Stream in relation to the IDCSA, that there is evidence in the record to suggest that Gulf Stream's actions violated at least one provision of the IDCSA, and that summary judgment on the IDCSA claim as a whole is inappropriate.

Plaintiffs have presented evidence of the following in relation to their IDCSA claim: (1) that the brand new RV manufactured by Gulf Stream was represented to have a functional slide-out room and other components; (2) that Gulf Stream's Limited Warranty covered this slide-out room as well as other various components of the RV; (3) that the performance, characteristics, accessories, uses, benefits, and/or quality of the slide-out room and other components of the RV were allegedly non-functional and/or

defective; (4) that Gulf Stream had actual knowledge or reasonably should have known of those deficiencies; (5) that Gulf Stream represented, through its Limited Warranty, that it would "arrange for repair or replacement" of those components and was "ready, willing and able to make every effort for a quick response;" and (6) that Gulf Stream knowingly and intentionally failed to timely respond and/or remedy any of the issues. This evidence, if believed by a trier of fact, is sufficient to sustain a claim under the IDCSA because by misrepresenting the performance, characteristics, uses, benefits or quality of the RV itself and/or the Limited Warranty and failing to make an offer to cure, Gulf Stream engaged in one or more uncured deceptive acts actionable under the IDCSA. See Ind. Code §§ 24-5-0.5-3(a)(1)-(2) & (8). Therefore, as a genuine dispute remains as to at least one theory of recovery under the IDCSA, the Court need not address Gulf Stream's remaining arguments. The motion for summary judgment on this ground is **DENIED**, and Plaintiffs' IDCSA claim remains pending.

*Rescission, Revocation of Acceptance and Restitution*

Finally, Gulf Stream maintains that neither revocation of acceptance nor rescission of the contract are available as remedies to Plaintiffs in this case under the Indiana Uniform Commercial Code or Indiana common law. Plaintiffs do not dispute this assertion; instead, they argue that rescission is available under

the MMWA and the IDCSA.[11]  Because Plaintiffs have failed to address

or dispute Gulf Stream's contention that revocation of acceptance

and an order of restitution is not an available remedy in this case

under the Indiana Uniform Commercial Code or Indiana common law,

the Court deems any suggestion to the contrary waived and will

proceed to address the issue only as to the MMWA and the IDCSA.[12]


In general, "[r]escission involves a judicial termination of

a party's contractual obligations; it is a court-ordered

'unwinding' of a contract, with the goal of returning the parties

to their positions prior to contracting.  This remedy is possible

only if such a *status quo ante* can be re-established." *Jones v.*

*InfoCure Corp.*, 310 F.3d 529, 535 (7th Cir. 2002).  See also *Pizel*

*v. Monaco Coach Corp.*, 364 F.Supp.2d 790, 794 (N.D. Ind. 2005)

(citing *A.J.'s Automotive Sales, Inc. v. Freet*, 725 N.E.2d 955,

967-68 (Ind. Ct. App. 2000)).

> A party bringing an action for rescission has
> made his election between: 1) affirming the
> contract, retaining the benefits, and seeking
> his damages, or 2) rescinding the contract,
> returning any benefits received, and being
> returned to the status quo.  The party
> rescinding a contract must repudiate the part

---

[11]  Plaintiffs also argue that a "buy back" remedy is available under the Ohio Lemon Law Act, but because the Court has determined that Indiana substantive law applies to this dispute, this argument need not be addressed.

[12]  The Court notes that Gulf Stream is correct that these remedies will not lie against a remote manufacturer of a consumer good.  See *Pizel v. Monaco Coach Corp.*, 364 F.Supp.2d 790, 794-95 (N.D. Ind. 2005).  Plaintiffs do not dispute that Gulf Stream is such a remote manufacturer.

> of the contract which is beneficial to him as
> well as that part of the contract which is
> not.  He must affirm or avoid the contract in
> whole and cannot treat it as good in part and
> void in part.  He may not affirm that part of
> the contract which pleases him and rescind
> that part which he considers disadvantageous.

*Barrington Management Co., Inc. v. Paul E. Draper Family Ltd. Partnership*, 695 N.E.2d 135, 142 (Ind. Ct. App. 1998) (internal citations omitted).  "A plaintiff seeking to rescind a contract bears the burden of proving his right to rescission, and that he is able to return *in specie* any property received under the contract, or its reasonable value if a return *in specie* is impossible." *Hart v. Steel Products, Inc.*, 666 N.E.2d 1270, 1275 (Ind. Ct. App. 1996) (emphasis added).

The damages provision of the MMWA provides that consumers may bring suit for "damages and other legal and equitable relief."  See 15 U.S.C. § 2310(d)(1).  However, the MMWA does not provide for any specific relief but rather simply provides a federal cause of action for state law breach of warranty claims.  See *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) ("the MMWA operates as a gloss on the [plaintiffs'] state law breach of warranty claims"); *Smith v. Monaco Coach Corp.*, 334 F.Supp.2d 1065, 1070 (N.D. Ill. 2004) ("While revocation of acceptance is one of the remedies contemplated by [the MMWA], section 2310(d) does not actually authorize specific types of relief, but instead only creates a jurisdictional basis for traditional state law claims.

33

[T]o determine whether a specific remedy is available, we must again consult state law.") (citations omitted).

As noted above, Plaintiffs do not dispute that revocation of acceptance and rescission are not available remedies in this case under the Indiana Uniform Commercial Code or Indiana common law; thus, the Court must determine whether the IDCSA provides the authority to "void the sale and order restitution sufficient to equate to a rescission or revocation of acceptance" as Plaintiffs maintain.[13]  The language of the IDCSA provides that "the court may void or limit the application of contracts or clauses resulting from deceptive acts and order restitution to be paid to aggrieved consumers."  Ind. Code § 24-5-0.5-4(d) (2007).

Nonetheless, as Gulf Stream points out, allowing "revocation and/or rescission of the contract" as requested in Plaintiffs' alternative prayer for relief would not serve to return the parties to the *status quo ante*.  Plaintiffs bought the RV from GRV and paid GRV the full retail purchase price.  However, GRV only paid Gulf Steam the lesser amount of the wholesale price of the RV.  There is no way to "unwind" the Limited Warranty so that both Gulf Stream and Plaintiffs would be returned to their pre-contract position.

---

[13]  In reply, Gulf Stream argues only that Plaintiffs have not brought themselves within the scope of the IDCSA and its remedies because the RV is not subject to Indiana's Lemon Law Act.  While it is true that a recreational vehicle is not subject to Indiana's Lemon Law Act, as discussed in the previous section, a genuine dispute remains as to at least one theory of recovery under the IDCSA that is not related to Indiana's Lemon Law Act.  See Ind. Code §§ 24-5-0.5-3(a)(1)-(2) & (8).  Thus, Gulf Stream's reply misses the mark.

See *Jones*, 310 F.3d at 535 ("[Rescission] is possible only if such a *status quo ante* can be re-established." ).  Plaintiffs have not met their burden of showing that revocation and/or rescission of the contract is an available remedy to them in this case.  See *Hart*, 666 N.E.2d at 1275.  Therefore, Gulf Stream's motion for summary judgment as to Plaintiffs' request for revocation and/or rescission of the contract is **GRANTED**.

CONCLUSION

For the reasons set forth above, the Motion for Partial Summary Judgment, filed by Gulf Stream on December 16, 2013 (DE #64), is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** as to Plaintiffs' Ohio Lemon Law Act, Ohio Consumer Sales Practices Act, Indiana Lemon Law Act, state law negligence claims, and Plaintiffs' alternative prayer for relief on the basis of revocation and/or rescission of the contract.  However, the motion is **DENIED** as to Plaintiffs' Indiana Deceptive Consumer Sales Act claim.

DATED: September 29, 2014          /s/RUDY LOZANO, Judge
                                   **United States District Court**