IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| NATHAN HOOPES and | ) | |
| DEVON HOOPES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:10-cv-00365-RL-RBC |
| | ) | |
| GULF STREAM COACH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT GULF STREAM COACH, INC.'S, TRIAL BRIEF

Defendant Gulf Stream Coach, Inc., by counsel, respectfully submit their Trial Brief pursuant to this Court's April 15, 2016, Scheduling Order, setting forth the remaining issues to be tried, the elements of each claim, stipulations of the parties, evidentiary questions and other legal issues anticipated to arise at trial, and anticipated testimony of each witness.

### Elements of Remaining Claims and Issues for Trial

Only three claims of Plaintiff's Amended Complaint remain pending before the Court: Indiana Deceptive Consumer Sales Act; Breach of Warranty, and Violations of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301, *et seq.*

*Breach of Warranty*

To establish a breach of warranty claim under Indiana law, Plaintiff must prove that a warranty existed, that Defendant breached the warranty, that the breach of the warranty was a responsible cause of Plaintiff's loss, and that Plaintiff suffered damages. Swan Lake Holdings, LLC v. Yamaha Golf Cart Co., 3:09-CV-228-PPS, 2010 WL 3894576, at *3 (N.D. Ind. Sept. 27, 2010);

1

Peltz Const. Co. v. Dunham, 436 N.E.2d 892, 894 (Ind. App. 4th Dist. 1982). "The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances." Id. citing Barnes v. Mac Brown and Co., Inc., 264 Ind. 227, 342 N.E.2d 619, 621 (Ind.1976). Plaintiff alleges breaches of express and implied warranties. As explained below, the implied warranty of merchantability is the only implied warranty at issue. See infra Section 5. The same elements for breach of warranty apply to express and implied warranties. See Frantz v. Cantrell, 711 N.E.2d 856, 860 (Ind. App. 1999) ("'Any action based on breach of warranty requires evidence showing not only the existence of the warranty but that the warranty was broken and that the breach of warranty was the proximate cause of the loss sustained.'"). For a good to be merchantable, it must be fit for the ordinary purpose for which the goods are used. Id.; Ind. Code Ann. § 26-1-2-314 (West).

The following issues remain for trial on the breach of warranty claim:

- Whether Defendant's limited warranty cover Plaintiffs' desired repairs;

- Whether Plaintiffs complied with the terms of the warranty;

- Whether Plaintiffs gave Defendant a reasonable number of opportunities to repair the vehicle;

- Whether Plaintiffs gave Defendant a reasonable amount of time to make the repairs;

- Whether Defendant after being given a reasonable amount of time and a reasonable number of opportunities failed to make repairs required under the warranty;

- Whether the RV was fit for the ordinary purpose for which such goods are used;

- Whether Plaintiffs relied on a warranty;

- Whether Plaintiffs had continuing defects;

- Whether Defendant's alleged failures reduced the value of the vehicle;

- Whether Defendant's alleged breach proximately caused Plaintiffs' damages;

- The amount of Plaintiffs' damages, if any;

- Whether Plaintiff provided Defendant notice of the alleged breach;

*Indiana Deceptive Consumer Sales Act claim*

To establish a claim under the Indiana Deceptive Consumer Sales Act, Plaintiffs must show that Defendant is a supplier and committed a deceptive act, specifically, that Defendant made an affirmative representation on a consumer transaction that it either knew to be untrue or that it failed to remedy within a reasonable period of time. Ind. Code Ann. § 24-5-0.5-3 (West); Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 332 (Ind. 2013). The Court determined correctly in the course of its Order on Summary Judgment that the IDCSA at the time of the incident (2010) applies to this case. Opinion and Order, Dkt#75, n.9. Plaintiffs must also show that Plaintiffs provided the requisite statutory notice and the deceptive act remained uncured; that Plaintiffs relied on the deceptive act; and that Plaintiffs suffered actual damages as a result. See McCormick Piano & Organ Co., Inc. v. Geiger, 412 N.E.2d 842, 849 (Ind. App. 3d Dist. 1980).

The following issues remain for trial on the IDCSA claim:

- Whether any uncured deceptive act occurred;

- Whether Defendant represented that the RV was of a particular standard, quality, grade, style, or model, if it was not.

- Whether Gulf Stream knew or should reasonably have known that the RV was not of a particular standard, quality, grade, style, or model. Gulf Stream must have compared the RV to an objective and independent standard for this provision to apply;

- Whether Defendant represented that the RV had sponsorship, approval, performance, characteristics, accessories, uses, or benefits it did not have that Gulf Stream knew or should reasonably have known it did not have;

- Whether Defendant represented that the RV involved or did not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation was false, and if Gulf Stream knew or should have reasonably known that the representation was false.

- Whether Plaintiffs gave Defendant proper notice of alleged defects.

- Whether any deceptive act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, such that the act shall not qualify as a deceptive act;

- Whether any representation constituting an alleged deceptive act was one made in good faith by Gulf Stream without knowledge of its falsity and in reliance upon the oral or written representations of the manufacturer, the person from whom Gulf Stream acquired the product, or any other person, provided that the source is disclosed to the consumer.

*Violation of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301, et seq.*

The MMWA is a "remedial statute designed to protect consumers from deceptive warranty practices." Anderson v. Gulf Stream Coach, Inc., 662 F.3d 775, 780 (7th Cir. 2011) (citing Skelton v. General Motors Corp., 660 F.2d 311, 313 (7th Cir. 1981)). "The MMWA 'allows consumers to enforce [limited] written warranties … in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action.' To bring an action under section 2310(d)(1), the consumer must give the warrantor 'a reasonable opportunity to cure' its failure to comply with 'an obligation

4

under any written or implied warranty.'"  Anderson v. Gulf Stream Coach, Inc., 662 F.3d 775, 781 (7th Cir. 2011)

Because this claim borrows state warranty law, there are no issues remaining for trial except those already discussed above in the breach of warranty claim.

## Stipulations

1.      Defendant stipulates that Plaintiffs purchased the RV at issue from General RV, with a limited warranty provided by Gulf Stream.

2.      For purposes of the Indiana Deceptive Consumer Sales Act, Defendant Gulf Stream Coach stipulates that it is a "supplier" as defined by the statute.

## Evidentiary questions and other legal issues anticipated to arise at trial

**1.      Defendants anticipate objections to Plaintiff's experts.**

The testimony of Mr. Garceau is inadmissible as it is outside the scope of his expertise, his data does not meet standards for reliable scientific testimony, and it is biased by his employer.

Mr. Garceau's lack of formal education bears on the reliability of his opinions.  See Rose v. Truck Ctr., Inc., 611 F.Supp.2d 745, 749-751 (N.D. Ohio 2009) (truck mechanic, who was a specialized technical expert, was not qualified to testify on issues of product defect and causation because his testimony exceeded the scope of his expertise when he failed to demonstrate that he knew more about mechanical engineering principles than an average juror, what he lacked in formal education and training he did not make up for in experience, as was evidenced by his lack of testing and its inadequacies); Smith v. Ford Motor Co., 215 F.3d 713, 716, 717, 719, 720 (7th Cir. 2000) (a mechanical engineer and a metallurgical engineer both opined failure of steering gearbox in van was due to design or manufacturing defects); Peak v. Kubota Tractor Corp., 924 F.Supp.2d 822, 825,

827, 829 (E.D. Mich. 2013) (degree in mechanical engineering rendered proffered expert qualified to offer an expert opinion regarding the mechanical design of agricultural equipment and its defects).

Mr. Garceau's testimony is unreliable.  "An expert who testifies about what he intuitively deducts is not helpful to a jury or this Court."  Fedelich v. Am. Airlines, 724 F.Supp.2d 274, 279, 280 (D. P.R. 2010) (methodology used by mechanical engineer expert was not sufficiently reliable when he intuitively rendered an opinion from a superficial visual analysis; court found his opinion was subjective, conclusory and could not reasonably be assessed for reliability) citing Daubert, 509 U.S. at 580, 113 S.Ct. 2786 (testimony must assist the trier of fact to understand the evidence or to determine a fact in issue).

Mr. Garceau's testimony is biased by the fact that he is employed a prior codefendant.  See F.R.E. 408. Courts have routinely considered the effect of release of a co-defendant on a witness's testimony. See John McShain, Inc. v. Cessna Aircraft Co., 563 F.2d 632 (3rd Cir. 1977) ("We believe that Judge McGlynn did not commit reversible error in admitting the agreement and in allowing comments upon it. The fact that a sister corporation of Harmon's employer had been released from liability in exchange for Harmon's testimony case doubt upon Harmon's impartiality.")

Finally, this Court indicated in its Order filed March 25, 2016, Dkt. # 122, that some of Mr. Garceau's opinions went "beyond the scope of this particular report and will be excluded."  The Court limited Mr. Graceau's testimony to "his own personal knowledge, experience, and testing as related to cable failures."  The Court decided that Mr. Garceau was not qualified to make general conclusions regarding cable failures.

Further, Mr. Bailey's report and testimony has failed to establish that his opinions are more

than speculation and that his testimony is the product of reliable principles and methods that he reliably applied to the facts of this case. Newton v. Roche Labs., Inc., 243 F.Supp.2d 672, 675 (W.D. Tex. 2002); F.R.E. 702 (c) and (d); Lippe v. Bairnco Corp., 288 B.R. 678, 686 (S.D. N.Y. 2003) ("An expert opinion is inadmissible if it is connected to existing data only by the ipse dixit of the expert.").  His opinions are also irrelevant, as they pertain only to the slide out, ignoring all of Plaintiff's other complaints.  The slide out is simply not covered by the limited warranty in this case.

  2. **Plaintiffs have no independent claim under the Magnuson-Moss Warranty Act, and are therefore no entitled to have the claim presented to the jury.**

  The jurisdictional clause of the MMA has two provisions:  one for violations of the act and the second for an action on a state law breach of warranty claim.  See 15 U.S.C. § 2310(d)(1); Gardynski–Leschuck v. Ford Motor Co., 142 F.3d 955 (7th Cir.1998) ("an aggrieved customer may sue on state-law claims in federal court, whether or not the parties are of diverse citizenship").  The Act is a conduit for state law claims, and limited warranties, not being covered under the remedial provision of the act, must be brought under state law.  Id., at 956.

  While it is true that the MMA bars a supplier's disclaimer of implied warranties, except its time limitation, where that supplier issued a written warranty, "15 U.S.C. § 2308 does not revive a state law breach of implied warranty claim, but instead permits a buyer to pursue a federal MMA claim against a supplier if the supplier disclaims an implied warranty while either making a written warranty or entering into a service contract." Rokicsak v. Colony Marine Sales and Serv., Inc., 219 F. Supp. 2d 810, 817 (E.D. Mich. 2002).  The only cause of action existing is "a federal cause of action under 15 U.S.C. § 2310(d)(1) for failure to comply with the MMA, but … not … a state cause of action 'under a written [or] implied warranty.'"  Id. citing  Boelens v. Redman Homes, Inc., 748

F.2d 1058, 1064 (5th Cir.1984).

Indeed, "limited warranties" under the MMA are not subject to the Act's substantive remedies. See Schimmer v. Jaguar Cars, Inc., 384 F.3d 402, 405 (7th Cir. 2004) ("Section 2304 of the Act imposes minimum federal warranty standards for 'full warranties' and provides remedies for their breach, including either a full refund of the purchase price or a replacement of the product if the warrantor cannot remedy defects or malfunctions after reasonable attempts to do so. Id. Yet, as pled in the complaint, the XK8's warranty is a 'limited' one not subject to § 2304 and thus not subject to the Act's substantive remedies, including a refund of the $69,513 purchase price."); Bailey v. Monaco Coach Corp., 350 F. Supp. 2d 1036, 1042 (N.D. Ga. 2004), aff'd, 168 Fed. Appx. 893 (11th Cir. 2006)(unpublished) (finding in part "because the law relating to limited warranties is not expressly modified, limited warranties, such as Monaco Coach's, are not governed by Magnuson–Moss but by the Uniform Commercial Code."), citing Walsh v. Ford Motor Co., 807 F.2d 1000, 1016 (D.C.Cir.1986) ("except in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."); Miller v. Four Winds Intern. Corp., 827 F. Supp. 2d 1175, 1185 (D. Idaho 2011) (applying Idaho's UCC to claim under MMA).

In this case, Gulf Stream issued a Limited Warranty.  Plaintiffs are thus limited to 15 U.S.C. § 2310(d)(1), and must succeed on a state law claim of breach of warranty to succeed under the MMA. Castagna v. Newmar Corp., 3:15-CV-249-TLS, 2016 WL 3413770, at *5 (N.D. Ind. June 22, 2016) ("Because the MMWA permits a suit for breach of an implied warranty "arising under State law," § 2301(7), both implied warranty claims must be analyzed under the applicable state law. See Anderson v. Gulf Stream Coach, Inc., 662 F.3d 775, 781 (7th Cir. 2011) ('[F]or all practical

8

purposes, the MMWA operates as a gloss on the [plaintiffs'] state law breach of warranty claims.')").

Plaintiff remedy is coextensive with state law, and the Court must look to state law only in deciding a remedy. <u>Skodras v. Gulf Stream Coach, Inc.</u>, 3:08 CV 441, 2010 WL 145370, at *3 (N.D. Ind. Jan. 8, 2010) ("With respect to 'limited warranties,' the Act grants the holder of a limited warranty a federal cause of action for a breach of warranty under the applicable state law but does not provide independent remedies such as those provided for 'full warranties.'"). "In such circumstances, the available remedies are contingent on state law and thus, the remedies to which [Plaintiff] is entitled are solely those available to her under Indiana law." <u>Skodras v. Gulf Stream Coach, Inc.</u>, 3:08 CV 441, 2010 WL 145370, at *3 (N.D. Ind. Jan. 8, 2010).

Because the claims are coextensive, for Plaintiffs here to succeed on their MMA claim they must also succeed on their breach of warranty claim under state law.  As such, Plaintiffs should not be able to present this claim independently to the jury.  The jury would be unnecessarily confused, as there is no issue for them to decide under this claim.  Any jury instruction on this claim then would be nothing more than redundant.  Further, cases have held that Plaintiffs in similar circumstances are not entitled to jury instructions on their MMA claim when the claim is coextensive with state law.  <u>See</u> <u>MacKenzie v. Chrysler Corp.</u>, 607 F.2d 1162, 1166 (5th Cir. 1979) ("Because plaintiff MacKenzie would have been entitled to recover no more under the Magnuson-Moss Warranty Act than he did recover under the court's instructions regarding the express and implied warranties set out by Mississippi law, we hold that the court's failure to grant appellant's requested charge [a jury instruction on the MMA], if error, was harmless and therefore insufficient to require reversal.").

**3.**     **Plaintiffs' damages are limited by the Limited Warranty in that Plaintiffs are not entitled to consequential damages and Plaintiffs are limited to repair and**

9

**replacement parts.**

To begin, the limited warranty, here, has two limiting provisions on damages: an exclusion of consequential damages and a limited remedy of repair and replacement parts. (The limited warranty provides for many exclusions and conditions, all of which Plaintiffs are bound to follow to have a valid claim for breach of warranty.).  Indiana law is clear that these two provisions are to be read, interpreted, and applied separately – independently- of each other.    "[T]he drafters of the UCC inserted distinct legal standards into each provision. A limited remedy will be struck when it fails its essential purpose; an exclusion of consequential damages fails when it is unconscionable…[further,] [w]hether a limited remedy fails of its essential purpose is an issue of fact that a jury may determine. Conversely, an exclusion of consequential damages stands unless it is unconscionable, and unconscionability is determined by a court as a matter of law." Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947–952 (Ind. 2001); Skodras v. Gulf Stream Coach, Inc., 3:08 CV 441, 2010 WL 145370, at *6 (N.D. Ind. Jan. 8, 2010) ("Under Indiana law, the enforceability of liability limitations is reviewed independently from any analysis of whether the limited remedies provided by the parties' agreement fail in their essential purpose."). Also, both exclusions and limitations of remedies are permitted under the MMA, as well.  Hahn v. Ford Motor Co., Inc., 434 N.E.2d 943, 952–53 (Ind.Ct.App.1982).

Plaintiffs are not entitled to incidental and consequential damages.  Paragraph five of the Limited Warranty effectively bars Plaintiffs damages claims:  "WHAT IS NOT COVERED BY LIMITED WARRANTY…Transportation to and from dealer, service center or manufacturing plant location, nor any consequential and/or incidental expenses, such as, but not limited to, loss of time, commercial loss, loss of use, towing charges, lodging, food, phone calls, inconvenience, bus or plane

10

fares, rental charges or storage fees."

This provision is enforceable unless it held unconscionable by the Court.  I.C. § 26-1-2-302; Skodras v. Gulf Stream Coach, Inc., 3:08 CV 441, 2010 WL 145370, at *6 (N.D. Ind. Jan. 8, 2010) ("Even if Gulf Stream's express warranties did in fact fail in their essential purpose, the limitation of liabilities contained in the warranty will 'stand unless it is unconscionable.'").

"The basic test is whether, in light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract ... the principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power."  Hahn v. Ford Motor Co., Inc., 434 N.E.2d 943, 951 (Ind. App. 2d Dist. 1982) (internal cites omitted).  This test acknowledges two branches of unconscionability: substantive, which "refers to oppressively one-sided and harsh terms of a contract," and procedural, which "involves the manner and process by which the terms become part of the contract."  Id., at 951.

Further, "'[p]rocedural unconscionability most frequently arises in cases characterized by consumer ignorance,' though it may also be found where '[s]eller's guile ... takes the form of a clause difficult to understand and placed in fine print on the rear of the contract.'"  Iron Dynamics v. Alstom Power, Inc., 1:06-CV-357ALSTOM, 2007 WL 3046430, at *8 (N.D. Ind. Oct. 15, 2007)(internal cites omitted).  However, the Court should always bear in mind "'that parties to a contract are provided broad latitude within which to fashion their own liability and remedies' and '[m]odification of warranties and limitations of remedy are not per se unconscionable.'"  Id., at *8.  Notably, the contract must be unconscionable when the parties entered into the contact; it cannot be

11

shown by facts occurring after the contract was formed.  Id. *9.

Here, Plaintiffs failed to allege in their complaint that the exclusion of incidental and consequential damages is unconscionable.  Further, there is no evidence or legal basis to support unconscionability.  Plaintiffs were not forced into purchasing an RV or choosing the particular RV they did.  Further, they are not unsophisticated individuals.  As the Court noted in its Order on Summary Judgment, Mr. Hoopes owns his own aluminum smelting company, and he took classes in electrical and mechanical engineering.  Ms. Hoopes is a manager of administration for Mercy Medical Center, and she has a bachelor's degree in business.  Neither of these individuals are unfamiliar with contracts.  The Court even noted, "Nothing in the record indicates that, at the time the Limited Warranty was signed, Plaintiffs, who are both educated business professionals, did not have an ample opportunity to read and understand those terms."  Dkt# 75, at 13.  Even more, the warranty specifically cautions Plaintiffs to consult their personal attorney.  Limited Warranty, ¶ 7, Exhibit A.  Finally, the exclusion was not hidden in any fine print on the back of an extensive document.  The section is in bold face, and begins with all caps "WHAT IS NOT COVERED BY LIMITED WARRANTY."  This is not a case where Defendant hid the provision from an ignorant consumer.

The Court should thus determine that this exclusion of consequential and incidental damages is not unconscionable.

Plaintiffs' remedy is also limited to repair and replacement parts.  The Limited Warranty provides, "All obligations of Gulf Stream pursuant to this Limited Warranty are limited to replacing or repairing the defective part or component."  Plaintiffs have failed to allege a claim under I.C. § 26-1-2-719, that the remedy failed its essential purpose and should thus be barred from presenting such

12

a claim to the jury.

Further, Plaintiffs cannot show that the remedy failed its essential purpose. The first step in the analysis of a claim under I.C. § 26-1-2-719(2) is to determine the essential purpose of the remedy. A limited remedy can be intended to maintain a reasonable division of responsibility between and manufacturer and a contractor when customers experience problem, when for instance, the manufacturer offers a limited warranty to the purchaser and the contractor offers additional coverage to the end consumer, which is exactly what happened here. Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc., 746 N.E.2d 941, 947–952 (Ind.,2001). Industry standards and the facts of the individual case are relevant in determining the essential purpose of the remedy. Id. The statute is not meant to take away parties ability to negotiate or accept risk allocations in warranties, which should be upheld. V.M. Corp. v. Bernard Distributing Co., 447 F.2d 864, 865 (7th Cir.1971) ("§ 2–719 was intended to encourage and facilitate consensual allocations of risk associated with the sale of goods.").

Further, a limited remedy fails only in the face of novel circumstances not contemplated by the parties. Id. In other words, a limited remedy fails of its essential purpose when an unexpected circumstance arises and neither party accepted the risk that such circumstance would occur. Id. It is the remedy that must fail of its purpose, not the contract or the law or any other entity. Id. One method of determining whether a remedy fails of its essential purpose is to determine whether the application of the remedy in the particular circumstances will further that purpose. Id. The length of time Plaintiff may have been having problems is irrelevant to this analysis. Id.

Here, the purpose of the limited remedy was to divide responsibility between the manufacturer and the seller. Just like in Rheem Manufacturing, that purpose is fulfilled by enforcing

the limited remedy.  In <u>Rheem Manufacturing</u>, the Indiana Supreme Court determined whether a limited warranty failed its essential purpose where the warranty made labor for repairs the purchaser's obligation.  The Court there found based on the warranty and industry standards that the purpose of the limited warranty was to "maintain a reasonable division of responsibilities between the manufacturer and the contractor when customers experienced problems."  The Court also found that all parties benefited from this allocation of risk:  the manufacturer did not have to pay to work on distant furnaces, customers could receive local repairs; the seller could sell its own warranty or service contracts to cover the difference.  <u>Rheem Mfg. Co. v. Phelps Heating & Air Conditioning</u>, Inc., 746 N.E.2d 941, 954 (Ind. 2001).  The Court went on to determine that the limited remedy met the purpose because the manufacturer that has production knowledge was in a position to recommend replacement parts; whereas the seller who had the manpower to work on the product could provide that service and profit from extended warranties.  <u>Id.</u>

Here, the limited remedy too is to divide responsibilities between the manufacturer and seller. Gulf Stream, the manufacturer, has an arrangement with General RV, to provide service to Gulf Stream vehicles.  This is explicit in the warranty.  <u>See</u> Limited Warranty, at § 3 Independent Dealer's Obligations, Exhibit A.  General RV benefits from providing those services and from selling extended and additional coverage to its customers.  The customer benefits from having the RV serviced locally.  Plaintiff was aware at the time of purchase that they could purchase extended coverage, that Gulf Stream is not a party to that transaction, and that Gulf Stream only offered a limited warranty on its product.

In addition, the remedy available did not fail its purpose.  Plaintiff cannot show that the possibility of defects in the RV is a circumstance that the parties did not contemplate.  The very fact

that there is a limited warranty discussing potential defects negates such and argument.  Thus, there is no unforeseen circumstance that would allow the remedy to fail.  On the contrary, the remedy is provided to Plaintiffs so that when there is an issue, it can be addressed.    Gulf Stream never represented that its product would be free from defects; it only represented that for covered defects, it would repair or replace parts.  Forcing Gulf Stream to pay more than agreed would amount to a rewriting of the allocation of risk between the parties, which cannot be accomplished. <u>V.M. Corp. v.</u> <u>Bernard Distributing Co.</u>, 447 F.2d 864, 865 (7th Cir.1971).

### 4.    Plaintiffs' have no independent claim for breach of contract and should not be permitted to present this claim to the jury.

Plaintiffs Second Amended Complaint alleges breach of contract in Count 4.  The allegations in this count are addressed to then defendant General RV, i.e., "The statements and actions by authorized representatives of General RV formed an addition contract between General RV and Plaintiffs regarding repair of the RV."  Second Amended Complaint, Dkt# 55, ¶ 55.

The only promises between Gulf Stream Coach and Plaintiffs are contained in written limited warranty.  Plaintiffs have alleged and, in fact, there exists no contract related to the sale or service of the RV between Gulf Stream and Plaintiffs.

Indiana law is clear that a breach of warranty claim and a breach of contract claim are not coextensive.  <u>Nelson v. Marchand</u>, 691 N.E.2d 1264 (Ind. App. 1998) ("Although actions for breach of contract and breach of warranty are closely related, they are not identical, as a warranty is a promise which is usually collateral to principal contract, although not necessarily so.").

Because there is no contract between Gulf Stream and Plaintiffs allowing a breach of contract claim to be presented at trial would do nothing but confuse the jury.

15

**5.     Plaintiffs have no claim for breach of warranty for a particular purpose and should not be permitted to present this claim to the jury.**

Plaintiffs have alleged breach of implied warranties of merchantability and fitness for a particular purpose under the UCC.  See Ind. Code Ann. §§ 26-1-2-315; 314 (West).  The Indiana Code for the implied warranty for fitness for a particular purpose is as follows:  "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under IC 26-1-2-316, an implied warranty that the goods shall be fit for such purpose."  Ind. Code Ann. § 26-1-2-315 (West).

> As noted by the Northern District of Indiana,
>
> The scope of the implied warranties of merchantability and fitness for a particular purpose are remarkably different…. The language in the two warranties illustrates that the implied warranty of merchantability is a broad warranty that covers the consumer's reasonable expectations that a good will be fit for its ordinary use. On the other hand, the warranty of fitness for a particular purpose is more specific because it goes beyond a general common use warranty and attaches only when the seller, at the time of contracting, knew of a particular purpose for which the good would be used. In addition, this warranty requires that the consumer must have relied on the seller's knowledge in selecting the suitable good that would meet the particular purpose.

Pizel v. Monaco Coach Corp., 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005).

The Indiana Supreme Court in Hyundai Motor Am., Inc. v. Goodin, 822 N.E.2d 947, 959 (Ind. 2005), invalidated long-standing precedent that vertical privity was required to state a claim for breach of implied warranties.  The Pizel Court clarified, "In reviewing the language of the warranties in connection with the holding in Goodin, it is clear that the Court intended to limit its holding to the implied warranty of merchantability."  Pizel v. Monaco Coach Corp., 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005).  The Pizel Court went on,

16

the Court did not address the implied warranty of fitness for a particular purpose, which extends beyond a consumer's minimum expectation, because this warranty is only created when the seller has knowledge that a consumer intended to use the good for a particular use. This type of knowledge is typically only acquired when parties negotiate a contract for sale, something which remote manufacturers rarely do. To hold a manufacturer liable for a breach of the implied warranty of fitness for a particular purpose when a manufacturer is not in the position to obtain the knowledge that a good is going to be used for a particular purpose runs contrary to Indiana's Uniform Commercial Code.

Pizel v. Monaco Coach Corp., 364 F. Supp. 2d 790, 793 (N.D. Ind. 2005)

Because Plaintiffs cannot show vertical privity between Gulf Stream and Plaintiffs, their claim for breach of implied warranty for a particular purpose must fail. "'Vertical' privity typically becomes an issue when a purchaser files a breach of warranty action against a vendor in the purchaser's distribution chain who is not the purchaser's immediate seller. Simply put, vertical privity exists only between immediate links in a distribution chain." Hyundai Motor Am., Inc. v. Goodin, 822 N.E.2d 947, 952 (Ind. 2005).

Here, Plaintiffs face the classic example of a lack of vertical privity. Plaintiffs purchased the RV from General RV. Their sales contract was with General RV only. Plaintiffs only connection to Defendant Gulf Stream is through the written limited warranty. As noted above, a warranty is not sufficient to establish privity of contract between the parties.

Further, even if Plaintiffs could establish privity, which they cannot, Plaintiffs could not show and have not alleged that they planned or needed their RV for any particular use that would not be the ordinary use for every consumer of an RV product. That is personal use and enjoyment of the vehicle.

Plaintiffs should therefore be barred from presenting this claim to the jury.

**6.     Notice under the IDCSA act is not coextensive with Plaintiffs' requirements**

**under the warranty, and because of Plaintiffs' failure to follow the requisite notice under the warranty, the warranty is void.**

There are two forms of notice at issue in this case. First, Plaintiff claims that Defendant Gulf Stream violated the IDCSA, which prescribes notice requirements. In order to establish the requisite statutory notice necessary to bring a claim alleging an uncured deceptive act, Plaintiffs must show that they:

1.      Gave notice in writing to Gulf Stream alleging an uncured deceptive act;

2.      Complied with the time limitation in providing such notice within the sooner of six months after the initial discovery of the deceptive act, one year following their consumer transaction, or any time limitation, not less than thirty days, of any period of warranty applicable to the transaction;

3.      Stated fully in the notice the nature of the alleged deceptive act; and

4.      Stated fully in the notice the actual damage caused by the alleged deceptive act.

Ind. Code Ann. § 24-5-0.5-5 (West).

This statutory notice requirement is separate an independent of Plaintiff's notice requirements under the Limited Warranty. The Limited Warranty states, "This Limited Warranty covers only those defects which occur or exist within the applicable period(s) referenced above <u>and</u> which are specifically identified to Gulf Stream in the manner specified in Section 4 of this Limited Warranty."

Notice under the warranty requires a writing, promptly reporting to Gulf Stream, by certified mail, return receipt requested, providing specific notice of the issues being experienced with the vehicle; the notice must be received by Gulf Stream within 30 days of the time the issue is known to the initial retail purchaser; further, additional notice is required if the vehicle is to be out of service for a consecutive 7 days or more. "Further, failure of the Purchaser to comply with the notification

18

provisions of this section WILL VOID THIS LIMITED WARRANTY."  Limited Warranty, ¶ 4, Exhibit A.

Plaintiffs are alleged to have started having issues with the RV on 1/30/2010, but the first correspondence complying with the requirements of the warranty occurred 6/15/2010.  Defendant maintains that the pull out is not covered under the limited warranty as discussed below; Defendant also maintains that Plaintiffs reported different problems each time they went to have their service repaired.  However, if the Court determines that all issues with the slide out had been presented to be repaired three times beginning in January, the Limited Warranty is voided by Plaintiffs failure to provide proper notice under the warranty.

This issue is separate from proper notice under the requirements under the IDCSA.

**7.     The 2010 version of the IDCSA applies to this case and Plaintiff should be prohibited from making any argument under the current version of the act.**

The Court correctly determined as part of its Opinion and Order on summary judgment that the 2010 version of the IDCSA applies to this case.  See Dkt# 75, n.9.  "The long standing rule of statutory construction mandates that a law shall be prospective only in the absence of an express statement that it be retroactive." Meier v. Am. Maize-Products Co., Inc., 645 N.E.2d 662, 676 (Ind. App. 2d Dist. 1995), decision clarified on reh'g, 650 N.E.2d 741 (Ind. App. 2d Dist. 1995).  As explained in the Order, "In Indiana, absent 'strong and compelling' reasons, statutes will not be interpreted to apply retroactively."  Miller v. LaSalle Bank Nat. Ass'n, 595 F.3d 782, 787 (7th Cir. 2010).

Here, there is no reason why the standard rule would not apply.  Plaintiff must bring its claim under the IDCSA, as the statute read in 2010.

8.       **Plaintiff alleges no incurable deceptive act claims under the IDCSA.**

The Court's summary judgment order Dkt# 75, states, in part, "This evidence, if believed by the trier of fact, is sufficient to sustain a claim under the IDCSA because by misrepresenting the performance, characteristics, uses, benefits or quality of the RV itself and or the Limited Warranty and failing to make an offer to cure, Gulf Stream engaged in one or more uncured deceptive acts actionable under the IDCSA."  Also this Court pointed out in its Order, "An incurable deceptive act, on the other hand, is one that is 'done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead.' Ind. Code § 24-5-0.5-2(a)(8) (2007). 'Intent to defraud or mislead is thus clearly an element of an incurable deceptive act' but is not required to prove an uncured deceptive act. <u>Perry</u>, 814 N.E.2d at 647 (citing <u>McKinney v. State</u>, 693 N.E.2d 65, 68 (Ind. 1998))." Dkt# 75, at 26-27.

Plaintiff's complaint alleges a slew of actions constitute an "uncured, unfair, and/or deceptive act or practice."  Dkt# 55, at 9-10.  Plaintiff's complaint fails to allege the required scienter element for any of Gulf Stream's alleged wrongs to be considered an incurable deceptive act.  Further, there is no evidence supporting the sort of scheme, which would constitute an incurable deceptive act.  And Plaintiffs' submitted proposed jury instructions number 19 indicates that the supplier's intent is irrelevant.  To quote their jury instruction, "Plaintiffs do not have to prove that Defendant intended to deceive them.  Having an intent to deceive is not necessary in this case.  For the purposes of the Consumer Act claim in this case, you are not to consider the intent of the Defendant."  Finally, Plaintiff has failed to present any argument or basis of an incurable deceptive act in its trial brief.

Because Plaintiff has failed to allege an incurable deceptive act and failed to submit any required briefing, Plaintiff may therefore not argue that Defendants committed an incurable

deceptive act, but is limited to uncured deceptive acts under the IDCSA.

**9.      Gulf Stream committed no unconscionable act under the IDCSA.**

Plaintiffs attempt to bring a claim under the IDCSA section I.C. § 24-5-0.5-10(b), which

states:

> (b) A supplier commits an unconscionable act that shall be treated the same as a deceptive act under this chapter if the supplier solicits a person to enter into a contract or agreement:  (1) that contains terms that are oppressively one sided or harsh; (2) in which the terms unduly limit the person's remedies; or (3) in which the price is unduly excessive; and there was unequal bargaining power that led the person to enter into the contract or agreement unwillingly or without knowledge of the terms of the contract or agreement. There is a rebuttable presumption that a person has knowledge of the terms of a contract or agreement if the person signs a written contract.

Ind. Code Ann. § 24-5-0.5-10 (West)

First, although Plaintiffs generally allege a violation of the IDCSA, Plaintiffs do not allege

that Gulf Stream solicited Plaintiffs to purchase the RV.  Solicitation is a required element of this

claim.  See e.g., Berghausen v. Microsoft Corp., 765 N.E.2d 592, 598–99 (Ind. Ct. App. 2002).  And

Plaintiffs cannot possibly show this element.  Plaintiffs voluntarily entered into an agreement to

purchase the RV from an independent retailer General RV.  Gulf Stream did not force them into

anything, and in fact, did not make any representations during the course of the initial transaction.

Plaintiffs dealt exclusively with General RV, wanted to purchase an RV, chose to go to General RV,

and chose to purchase the RV they ended up purchasing.

Moreover, the Court addressed these same arguments by Plaintiffs in the Order for Summary

Judgment, when Plaintiffs alleged that they should not be bound by choice of law provision of the

warranty.  The Court stated,

Nothing in the record indicates that, at the time the Limited Warranty was signed, Plaintiffs, who are both educated business professionals, did not have an ample opportunity to read and understand those terms. In fact, the record shows that Plaintiffs were simply standing by a popcorn machine at GRV making small talk with the sales representative when they were given the Limited Warranty and asked to sign it. There is no indication that Plaintiffs were under duress at that time or that they were forced to sign the Limited Warranty unwillingly. There was no evidence that fraud or misrepresentation was employed when Plaintiffs were presented with the written document itself. In fact, there is no evidence in the record to indicate that, at the time of signing, Plaintiffs found any of the Limited Warranty's terms unreasonable, oppressive, or objectionable whatsoever.

Dkt# 75, at 13-14.

Plaintiffs simply cannot show that Gulf Stream in any manner solicited Plaintiffs to enter into a contract or agreement. Plaintiffs also cannot show that any provision of the warranty was in any manner unconscionable.

**10.    Plaintiff is limited to the specifically enumerated deceptive act under the IDCSA, which do not include a violation of the Magnuson-Moss Warranty Act.**

A violation of the Magnuson-Moss Warranty Act is not a violation of IDCSA. Ind. Code § 24-5-0.5-3(a) (2010) contains a finite list of acts that qualify as deceptive acts. Nowhere does the IDCSA state that violation of the Magnuson-Moss Warranty Act is a violation of the IDCSA.

The list includes the following provision related to warranties: "That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false." I.C. § 24-5-0.5-3(a)(8). This is facially inconsistent with Plaintiffs' claim under the MMA, which as explained above is coextensive with their state-law breach of warranty claims. Further, there is no specific reference to the MMA in the IDCSA, even though other federal statutes are referenced. See I.C. § 24-5-0.5-3(a)(19). Finally, there is no

22

catchall provision under this statute that would allow the jury to infer a deceptive act not specifically enumerated under the statute. Plaintiffs should therefore be precluded from arguing that any act besides those specifically listed in the act constitutes a deceptive act, including a violation of the MMA.

**11.     The slide-out is not covered by the limited warranty.**

Although the Court listed in its undisputed statement of facts that the "RV's slide-out component is a component covered by the Limited Warranty," Dkt# 75, at 6-7, such representation was never made to the Court in the course of these proceedings and remains in dispute for trial.

Defendant has consistently maintained that the RV's slide-out is not covered under the Limited Warranty. The Limited Warranty provides a one year warranty under normal use against defects in Gulf Stream materials and/or workmanship in the construction of the recreational vehicle and a two year warranty under normal use against structural defects in Gulf Stream materials and/or workmanship in the construction of the floors, walls and roof.   The Limited Warranty covers only those defects occurring within the warranty period and "specifically identified to Gulf Stream in the manner specified in Section 4 of this Limited Warranty." Limited Warranty, Exhibit A, ¶ 1.

The Limited Warranty goes on, "WHAT IS NOT COVERED BY LIMITED WARRANTY", and includes in part "Appliances and component parts not manufactured by Gulf Stream, including, but not limited to, auxiliary generator power plants, refrigerators, air conditioners, water heaters, furnaces, invertors, etc." and "Any component part which possesses its own warranty from a party other than Gulf Stream." Limited Warranty, Exhibit A, ¶ 5.

**12.     General RV was not an agent of Gulf Stream.**

Plaintiffs' allegations under its claims for breach of express and implied warranties implicate

agency law.  However, the limited warranty is clear, "This recreational vehicle has been sold to an independent dealer, and not an agent of Gulf Stream."  Limited Warranty, at ¶ 6, Exhibit A.  The limited warranty later states, "Authorized dealers and service centers are independent contractors and independently owned businesses."  Limited Warranty, at ¶ 6, Exhibit A.  Further, the sales contract is also clear: "'Manufacturer' shall mean the corporation that manufactured the vehicle or chassis, it being understood, by the Purchaser and Dealer that the Dealer is in no respect the agent of the Manufacturer, that the Dealer and Purchaser are the sole parties to this agreement and that reference to the Manufacturer is for the purpose of explaining generally certain contractual relationships existing between the Dealer and Manufacturer." Purchase agreement, at 1, Exhibit B.

Further, Plaintiffs have not alleged and there were not any additional representations made on behalf of Gulf Stream that are relevant to the causes of action still pending before the Court.

The sales contract was fully integrated.   The contract of sale, to which Gulf Stream was not a party, states in all caps, "THIS PURCHASE AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN GENERAL RV AND PURCHASER.   NO ONE HAS AUTHORITY TO MAKE ANY REPRESENTATION BEYOND THIS AGREEMENT AND NO OTHER REPRESENTATIONS OR INDUCEMENTS, VERBAL OR WRITTEN HAVE BEEN MADE, WHICH WAR NOT CONTAINED ON THIS DOCUMENT."  Purchase Agreement, at 1, Exhibit B.

In Indiana, "where the parties to an agreement have reduced the agreement to a written document and have included an integration clause that the written document embodies the complete agreement between the parties ... the parol evidence rule prohibits courts from considering parol or extrinsic evidence for the purpose of varying or adding to the terms of the written contract." Judson

Atkinson Candies, Inc. v. Kenray Associates, Inc., 719 F.3d 635, 638 (7th Cir. 2013). The proper weight to be given to an integration clause is to be determined on a case by case basis. Id. "Evidence, parol or otherwise, extrinsic to the written provisions of a contract will not be admitted for the purpose of varying or adding to that writing when it appears that both parties intended a complete integration of that contract in the written terms." Franklin v. White, 493 N.E.2d 161, 166 (Ind. 1986).

As a fully integrated sales agreement, Plaintiff cannot allege that additional terms of the contract were not included in the agreement.

Further, Plaintiff has explicit notice in both the sales agreement and the warranty that General RV was not Gulf Stream's agent.

In agency law, there are two classifications for authority: actual authority or apparent authority. "Actual authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account. The focus of actual authority is the belief of the agent. Actual authority may be express or implied and may be created by acquiescence." Fid. Nat. Title Ins. Co. v. Mussman, 930 N.E.2d 1160, 1165 (Ind. App. 2010) (internal cites omitted). Whereas, apparent authority "refers to a third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party and not from the representations or acts of the agent." Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000)(internal cites omitted).

First, there is no indication that General RV had express authority. Second, Plaintiffs could not have reasonably believed General RV to have apparent authority because the sole representations

from Gulf Stream to Plaintiffs specifically indicated that General RV was not an agent.

Additionally, inherent agency power is a part of apparent authority.  Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1211 (Ind. 2000) ("On occasion, Indiana has taken an expansive view of apparent authority, including within the discussion the concept of 'inherent agency power.'").  It is a status based authority not derived from actual or apparent authority, and in business it is not a lower-tiered employee.  Id.  "The doctrine of inherent agency provides that an agent may derive his power to bind the principal wholly from his relation with the principal, e.g., as president or officer of the principal."  Am. Heritage Banco, Inc. v. Cranston, 928 N.E.2d 239, 249 (Ind. App. 2010) citing Menard, Inc. v. Dage–MTI, Inc., 726 N.E.2d 1206 (Ind.2000).  "The doctrine requires that: (1) the agent acted within the usual and ordinary scope of his authority; (2) the other party reasonably believed that the agent was authorized to act for the principal; and (3) the other party had no notice that the agent was not authorized to act for the principal."  Am. Heritage Banco, Inc. v. Cranston, 928 N.E.2d 239, 249 (Ind. App. 2010); Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1212 (Ind. 2000); see also Burger Man, Inc. v. Jordan Paper Prods., Inc., 170 Ind.App. 295, 311-13, 352 N.E.2d 821, 831-32 (1976) ("When the president and general manager does an act within the domain of the general objects or business of the corporation, and within the scope of the usual duties of the chief officer, it will be presumed that he had the authority to do it, and whoever would assert the contrary must prove it.").

Here, Plaintiffs had explicit notice that the alleged agent, General RV, was not an authorized agent of Gulf Stream.  Plaintiffs therefore cannot show that they had no notice as required for inherent authority.  Further, inherent power necessitates some status between the General RV and Gulf Stream.  Plaintiffs had explicit notice that the only relationship between Gulf Stream and

General RV was contractual.  See Purchase agreement, at 1, Exhibit B; Limited Warranty, at ¶ 3, Exhibit A.  Plaintiff can therefore not maintain that General RV was an agent of Gulf Stream.

### 13.    Plaintiffs should not be permitted a double recovery.

General RV and Norco are no longer Defendants in this case.  Plaintiffs settled their claims with Norco and General RV, and to the extent Gulf Stream and Norco and/or General RV are joint obligors, Plaintiffs should be prohibited from recovering more than their loss.  See Consol. Rail Corp. v. Travelers Ins. Companies, 466 N.E.2d 709 712 (Ind. 1984) ("'a plaintiff is entitled to only one recovery for a wrong. Payments made in partial satisfaction of a claim must be credited against the remaining liability to prevent a double recovery.'…The tort rule still would obtain in a contract action, if, in fact, the defendants were joint obligors on the same contract and the same obligation.").  The Court exercises this setoff after trial.

Thus, if Norco and/or General RV are found to be a joint obligor with Gulf Stream as to the slide out, Plaintiff's recovery if any should be reduced by the amount of Plaintiff's settlement with Norco.

### 14.    Attorney's fees issues should be bifurcated.

If Plaintiffs succeed on any claim for which an award of attorney's fees is appropriate, the amount of attorney's fees is to be fixed by the court after the appropriate motion and briefing. Plaintiff filed, without objection a Motion in Limine and for Bifurcation of Attorney Fee Issue on August 4, 2015, on which the Court failed to enter a ruling.  Defendant and Plaintiffs agree that any issue as to the amount or reasonableness of attorneys' fees is an issue for the Court to decide only if Plaintiff succeeds on the merits of their Indiana Deceptive Sale Act or Manguson-Moss Act Claims. It should be subject to briefing after trial.

**Anticipated Testimony**

    1.      Nathan Hoopes

Mr. Hoopes will testify generally as to his complaints regarding the RV and the attempts to repair its issues.

    2.      Devon Hoopes

Ms. Hoopes will testify generally as to his complaints regarding the RV and the attempts to repair its issues.

    3.      Mr. Brian Biggie

Mr. Biggie is knowledgeable about the plaintiffs' complaints with the RV unit and the service work performed by General RV. He will be testifying to negate Plaintiffs' claims and support Defendant's defenses.

    4.      Mr. Anthony Suddon

Mr. Suddon is expected to testify that he was an employee of Gulf Stream while the repairs were being made to Plaintiffs' RV. Mr. Suddon will also testify as to the inspection of the unit in August of 2010. During his deposition, he was critical of the repairs made by General RV. Mr. Suddon is now an employee of General RV.

    5.  Any witnesses called by Plaintiffs

    6.  Any witnesses needed to authenticate exhibits

    7.  Any and all persons who performed or has knowledge of any and all complaints and repairs or attempted repairs of the GT9 2010 Supernova 6400

    8.  Any witnesses needed for rebuttal

HUNT SUEDHOFF KALAMAROS LLP

By: /s/ Lyle Hardman_____
      Lyle R. Hardman, Esq. (#16056-49)
      205 W. Jefferson Blvd., Suite 300
      P.O. Box 4156
      South Bend, IN 46634-4156
      Telephone:  (574) 232-4801
      Fax: (574) 232-9736
      Email: lhardman@hsk-law.com


## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that on the October 20, 2016, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:  James M. Wherley, Thomas W. Connors, Robert B. Preston, III, and Ronald L. Burdge.

                    /s/ Lyle Hardman_____
                    Lyle R. Hardman, Esq. (#16056-49)