UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
AT FORT WAYNE

**NATHAN HOOPES, et. al.**

    PLAINTIFFS

    - VS. -

GULF STREAM COACH, INC.

    DEFENDANT

CASE NO 1:10-cv-00365-RL-RBC

JUDGE JON E. DeGUILIO

MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEY
FEES, COSTS AND EXPENSES

---

    The Defendant and its six attorneys have ably and vigorously defended this case from the day the lawsuit was filed over seven years ago, as seen from it numerous pre and post verdict motion pleadings.

    The Defendant's very able and stalwart defense of this case, through its multiple attorneys, has forced Plaintiffs to spend and incur substantial sums to litigate and prove their case, when all Plaintiffs ever wanted was for Defendant to take back the recreational vehicle and pay the legal costs, which were considerably lower 7 years ago.

    Forced to go to verdict and forced to defend the Jury's verdict, now Plaintiffs have the right to recover the costs and expenses that they have reasonably incurred.

**I.**     **The Magnuson Moss Warranty Act Is Remedial in Nature.**

    The Magnuson Moss Warranty Act is remedial in nature and is designed to facilitate relief which would otherwise not be available as a practical matter for individual consumers. *Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028, 1033 (N.D. Ind.

Page 1

1981). And, the Court is authorized to award a reasonable sum to defray costs and expenses, including attorney fees, as part of a judgment in favor of a consumer. 15 U.S.C. § 2310(d)(2).

## II.   Fees Are Determined Using the Lodestar Approach.

The Court is required to determine a reasonable fee based on the "lodestar" — the product of reasonable time expenditures multiplied by a reasonable hourly rate — by evaluating the parties' evidentiary submissions. *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962, 972 (N.D. Ind. 2002)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)). The Court is not required to determine what fee is "just" or "fair."

There is a strong presumption that the lodestar figure represents a reasonable fee but it can, nevertheless, be increased by the factors discussed below. *Id.*; see also *Hensley*, 461 U.S. at 434; *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999).

## III.   Basing a Fee Decision on Old Fee Awards Is an Abuse of Discretion.

In determining the prevailing market rate, it is an abuse of discretion for a Court to rely on cases decided two or more years before the attorneys actually rendered their services. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. Cal. 2008); *Bell v. Clackamas County*, 341 F.3d 858, 869 (9th Cir. 2003)(holding that it was an abuse of discretion to apply market rates in effect more than two years before the work was performed).

## IV.   Time Expended in Establishing Fees Is Compensable.

In statutory fee-shifting cases, federal courts have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable. *In re Nucorp*

*Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985). This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spend in establishing their rightful claim to and the amount of the fee. *Id.* at 660; see also *Kinney v. Int'l Bd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. Cal. 2008).

## V.   Percentage Approaches and Mechanical Reductions to Fees Are Impermissible.

Courts have routinely rejected the notion of any proportionality between a verdict and the fees to be granted under an applicable fee-shifting statute.

The Seventh Circuit has "repeatedly rejected the contention that a district court should look to the percentage of the plaintiff's initial demand actually recovered through settlement or judgment and then mechanically reduce the attorney's fee award by a proportionate amount." *Rice*, 237 F. Supp. 2d at 974; see also *Connolly v. National School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir. 1999)(citing *Sheehan v. Donlen Corp.*, 173 F.3d 1039 (7th Cir.1999); *Alexander v. Gerhardt Enterprises, Inc.*, 40 F.3d 187, 194 (7th Cir.1994); *Wallace v. Mulholland*, 957 F.2d 333, 339 (7th Cir.1992).

This is particularly applicable when a consumer prevails on a Magnuson Moss Warranty Act claim. See *Gorman*, 513 F. Supp. at 1033.

## VI.   Plaintiffs Prevailed on the Merits and Are Entitled to Recover Fees.

Here, Plaintiffs have prevailed on their breach of warranty and Magnuson Moss Warranty Act claims. [ECF Doc. # 212] The basic set of facts necessary to prevail on the breach of warranty and MMWA claims included those that were applicable for the non-prevailing Indiana Deceptive Consumer Sales Act claim. As such, the time expended on

the non-prevailing IDCSA claim in this case involved basically the same time that was

expended on Plaintiff's prevailing claims that were presented to the Jury at trial and can

not clearly and easily be "cut out" of the fee-shifting time in this case.

Where, as here, the evidence for the claims can not be separated into a claim for

which fees are recoverable and a claim for which no fees are recoverable, the trial court

must award fees for the full amount of time expended. As explained in *Hensley v.*

*Eckerhart*, 461 U . S. 424, 434-435, which was followed by *Riverside v. Rivera*, 477 U .

S. 561, 569:

> The product of reasonable hours times a reasonable rate does not [****20]
> end the inquiry. There remain other considerations that may lead the
> district court to adjust the fee upward or downward, including the
> important factor of the "results obtained." This factor is particularly crucial
> where a plaintiff is deemed "prevailing" even though he succeeded on only
> some of his claims for relief. In this situation two questions must be
> addressed. First, did the plaintiff fail to prevail on claims that were
> unrelated to the claims on which he succeeded? Second, did the plaintiff
> achieve a level of success that makes the hours reasonably expended a
> satisfactory basis for making a fee award?
>
> [****21] In some cases a plaintiff may present in one lawsuit distinctly
> different claims for relief that are based on different facts and legal
> theories. In such a suit, even where the  [*435] claims are brought against
> the same defendants -- often an institution and its officers, as in this case
> -- counsel's work on one claim will be unrelated to his work on another
> claim. Accordingly, work on an unsuccessful claim cannot be deemed to
> have been "expended in pursuit of the ultimate result achieved." Davis v.
> County of Los Angeles, 8 E. P. D., at 5049. The congressional intent to
> limit awards to prevailing parties requires that these unrelated claims be
> treated as if they had been raised in separate lawsuits, and therefore no fee
> may be awarded for services on the unsuccessful claim.
>
> [****22] It may well be that cases involving such unrelated claims are
> unlikely to arise with great frequency. Many civil rights cases will present
> only a single claim. In other cases the plaintiff's claims for relief will
> involve a common core of facts or will be based on related legal theories.
> Much of counsel's time will be devoted generally to the litigation as a
> whole, making it difficult to divide the hours expended on a claim-by-claim

basis. Such a lawsuit cannot be viewed as a series of discrete claims.
Instead the district court should focus on the significance of the overall
relief obtained by the plaintiff in relation to the  [***52]  hours reasonably
expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should
recover a fully compensatory fee. Normally this will encompass all hours
reasonably expended on the litigation, and indeed in some cases of
exceptional success an enhanced award may be [****23]  justified. In these
circumstances the fee award should not be reduced simply because the
plaintiff failed to prevail on every contention raised in the lawsuit. See
Davis v. County of Los Angeles, supra, at 5049. Litigants in good faith may
raise alternative legal grounds for a desired outcome, and the court's
rejection of or failure to reach certain grounds is not a sufficient reason for
reducing a fee. The result is what matters.

Filed herein are the affidavits of both counsel for Plaintiffs which provide detailed

information and opinions as to the reasonableness and necessity of the fees and costs of

litigation incurred and now requested.

The affidavits of both counsel also provide authentication and verification of the

attached detailed itemized records of the time and costs business records establishing

the amount actually expended on this case for which compensation is sought in this

case.

## VII.   The requested hourly rates are reasonable in this case.

A "reasonable" hourly rate should reflect the "market rate" for the attorney's

services. *Rice*, 237 F. Supp. 2d at 972 (citing *Hensley*, 461 U.S. at 434; *People Who Care*

*v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir.1996)). The

market rate is the rate that lawyers of similar ability and experience in the community

normally charge their paying clients for the type of work in question. *Rice*, 237 F. Supp.

2d at 972 (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th

Cir.1999)).

The burden of proving the market rate is on the fee applicant; however, once the attorney provides evidence establishing the market rate, the burden shifts to the defendant to prove otherwise. *Rice*, 237 F. Supp. 2d at 972. Here, the attorneys for Plaintiffs request fees at their actual billing rates that paying clients pay and an attorney's actual billing rate for similar litigation is presumptively appropriate to use as the market rate in calculating an award of attorney fees. *Pickett v Sheridan Health Care Center*, 664 F.3d 632, 640.

Generally, affidavits of the plaintiff's attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *Rice*, 237 F. Supp. 2d at 972; see also *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. Cal. 2008); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

**A.     The Hourly Rates Requested by Attorney Burdge's Law Firm Are Reasonable.**

Attorney Burdge requests an hourly rate of $400, which is less than his current hourly billing rate of $425 and he has had clients pay hourly for his legal services in non-fee-shifting cases at his full hourly rate. Burdge Affidavit, Exhibit 1, para.s 11 and 17. Moreover, Attorney Burdge was awarded an hourly rate of $350 an hour in a 1999 case (Id, at para. 16), so clearly $400 would be a modest increase considering 17 years' passage of time. Attorney fees sought by Burdge Law Office are:

|  | Position | Rate |
|---|---|---|
| Ronald Burdge | Attorney | 400 |
| Beth Wells | Attorney | 275 |

Page 6

| Scarlett Steuart | Attorney | 175 |
|---|---|---|
| Jacob Mosher | Law Clerk | 125 |
| Elizabeth Nijak | Paralegal | 125 |
| Katy Shover | Paralegal | 125 |
| Brandon Wilder | Law Clerk | 125 |

As recited in Attorney Burdge's Affidavit (Exhibit 1, para.s 17, 18, 19), the hourly rates of the attorneys in his office who have worked on this file have been increased since taking on this case four years ago. Current rates are:

| | Old Rate | Current Rate |
|---|---|---|
| Ronald Burdge | 400 | 425 |
| Beth Wells | 275 | 350 |
| Scarlett Steuart | 175 | 250 |
| Jacob Mosher | 125 | - |
| Elizabeth Nijak | 125 | - |
| Katy Shover | 125 | - |
| Brandon Wilder | 125 | - |

Mindful of the considerable expertise, experience and reputation the members of Burdge Law Office have earned since 1978, and the fact that Burdge Law Office only handles cases of the type involved here, i.e., warranty rights litigation, the hourly rates requested by Mr. Burdge and his legal staff are presumptively reasonable since they are the actual billed rates for paying clients and the attorney historic rates are less than the current hourly rates.

Moreover, affidavits have been provided to the Court from three Indiana attorneys supporting Mr. Burdge's request for $400 an hour and noting it to be below

market rates for an attorney with Burdge's experience level. See, Affidavit of Ryan F. Frasher (Exhibit 2); Affidavit of Steven Hofer (Exhibit 3); Affidavit of Robert E. Duff (Exhibit 4).

### B.   The Hourly Rates Requested by Attorney Connors' Law Firm Are Reasonable.

Attorney Connors' law firm was paid at their full hourly rate by Plaintiffs throughout this litigation and have been counsel on this case since its initiation in 2010. Over the years, Mr. Connors' normal hourly rates have increased from $235.00 to $295.00 on this case. See Affidavit of Thomas Connors, Exhibit 5.

Mr. Connors' law office attorney fee compensation is explained in the Affidavit of Attorney Connors filed herein and is sought as follows:

|  | Position | Rate |
|---|---|---|
| Thomas Connors | Attorney | 235 - 295 |
| Robert Preston | Attorney | 195 |
| James Wherley | Attorney | 235 |
| Rod Moore | Attorney | 150 |
| Eric Francis | Attorney | 155 |
| Benjamin Wright | Paralegal | 80 |
| Jennifer Carter | Paralegal | 100 |

Mr. Connors' Affidavit verifies the experience and education and training of each of the time-keepers in his law office and also his opinion as to the reasonableness of their individual hourly rates. The affidavits of attorney Burdge and Indiana attorney Duff further support the reasonableness of Mr. Connors' hourly rate. See, Affidavit of Attorney Burdge (Exhibit 6); Affidavit of Robert E. Duff (Exhibit 7).

Considering the prevailing market rates and their many years of litigation experience, and the fact that Plaintiffs have paid the hourly rates requested by Mr. Connors' law office throughout this litigation, the hourly rates sought by Mr. Connors' law office are reasonable.

## VIII.  The Requested Hours Expended Are Reasonable in this Case.

The hours expended by Plaintiffs' counsel are also reasonable.

In requesting an award for attorney fees, an applicant must exercise "billing judgment" regarding the number of hours submitted to the Court. *Spegon v. Catholic Bishop*, 175 F.3d 544, 552 (7th Cir. 1999) (citing *Hensley*, 461 U.S. at 434). In exercising "billing judgment," the Supreme Court emphasized that counsel for the prevailing plaintiff should "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Id. (citing *Hensley*, 461 U.S. at 434).

Attorney Burdge's affidavit further explains how that was accomplished in this case. See Burdge Affidavit, Exhibit 1, para.s 7 and 8.

Nevertheless, when a common core of facts and related legal theories are involved in a case, even on different claims, the total time is compensable. *Hensley v. Eckerhart*, 461 U . S. 424, 434-435.

### A.     The Hours Expended by Attorney Burdge Are Reasonable.

Attorney Burdge and his staff have reasonably expended in excess of 700.94 hours for which compensation is sought in the litigation of this case since 2013. See Affidavit of Ronald L. Burdge, Exhibit 1 and its attached Exhibits 1-A through 1-H, all of which are incorporated herein by reference as if fully recited herein. The records provide

Page 9

sufficient contemporaneously record detail that justifies the reasonableness of the time requested.

Burdge Law Office attorney fee compensation is explained in the Affidavit of Attorney Burdge (Exhibit 1, para.s 11, 18 through 23) filed herein and is sought as follows:

|  | Position | Rate | Hours | Total $ |
|---|---|---|---|---|
| Ronald Burdge | Attorney | 400 | 455.71 | 182,284.00 |
| Beth Well | Attorney | 275 | 13.62 | 3,745.50 |
| Scarlett Steuart | Attorney | 175 | 202.67 | 35,467.25 |
| Jacob Mosher | Law Clerk | 125 | 25.62 | 3,202.50 |
| Elizabeth Nijak | Paralegal | 125 | 0.20 | 25.00 |
| Katy Shover | Paralegal | 125 | 1.49 | 186.25 |
| Brandon Wilder | Law Clerk | 125 | 1.63 | 203.75 |
| | | Totals: | 700.94 | 225,114.25 |

In the exercise of billing discretion, it should be noted that originally some claims in this case were founded upon Ohio laws and included an argument for rescission. Those claims were dismissed on defendant's motion and the 15.75 hours of time expended in pursuit of those was redacted from records submitted because no compensation is sought for those non-prevailing arguments. See Burdge Affidavit, Exhibit 1, para. 8.

Also, in compiling the fee records for submission to this case, 20.43 hours of various time entries were reduced to a "no charge" status through the exercise of billing discretion and were deleted from this counsel's fee request entirely. Id.

Prior to that billing records review, 6.2 hours of time related to defeating

Defendant's Daubert Motion against Thomas Bailey (ECF Doc # 94) was reduced to "no charge" status. Id.

Here, Attorney Burdge has properly exercised billing judgment, and considering the complexity of this case, the Defendant's stalwart defense of the case, and the seven years' length of time expended litigating this case, the hours requested by Attorney Burdge's law firm are reasonable, both in totality and each time entry individually.

**B.      The hours expended by Attorney Connors are reasonable.**

Attorney Connors and his staff have reasonably expended 590.3 hours in litigating this case since 2010 and billed Plaintiffs for that time at the actual hourly rates charged at the time, and the bills were paid throughout the case by Plaintiffs; the total charges were $162,213.31 for a total of 590.3 hours. See Affidavit of Thomas Connors, Exhibit 5 and its attached Exhibits A through E, all of which are incorporated herein by reference as if fully recited herein. The records provide sufficient contemporaneously record detail that justifies the reasonableness of the time requested.

This time included the work in opposition to defendant's Daubert motion against Plaintiff's expert Bernie Garceau (ECF Doc # 92), which defense was almost entirely successful.

Considering the complexity of this case, the Defendant's strong approach to the defense of this case, and the seven years' length of time expended litigating this case, the hours requested by Attorney Connors' law firm are reasonable, both in totality and each time entry individually. Id.

**IX.    Travel Time Is Compensable in this Case.**

A considerable amount of time was spent by Plaintiffs' counsel traveling to and

from Indiana courts in Fort Wayne, Hammond and South Bend, plus depositions of defendant's witnesses in South Bend. Plaintiffs anticipate that defendant will object to the travel time compensation being sought in this case, in spite of applicable case law holding that Plaintiffs' attorneys should be compensated for travel time at their full hourly rates. It is also notable that defendant's own warranty to Plaintiffs mandated that this case be filed in Indiana with its forum and jurisdiction and applicable law clauses.

Defendant may attempt to argue that a reduced rate should apply to travel time; however, this argument was long ago considered and rejected by the Seventh Circuit in *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). In analyzing whether travel time is compensable at a full or reduced rate, Judge Posner noted that "[w]hen a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling." Id. This creates a presumption that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time. Id.

Other courts around the country have also held that reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis. See e.g. *In re Pine*, 705 F.2d 936 (7th Cir. 1983)(stating that " lawyers normally charge for their travel time. That time is taken away from professional work, and thus involves an opportunity cost which is approximated by the lawyer's normal billing rate multiplied by the time spent in travel."); *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir. 1983) (holding that the reasonable travel time of the prevailing party's attorneys ordinarily is compensated on an hourly basis); *Crumbaker v. Merit Sys. Prot. Bd.*, 781 F.2d 191 (Fed. Cir. 1986) (adopting the analysis in *Henry v. Webermeier*, 738 F.2d 188 (7th Cir.

1984)); *Johnson v. Credit Int'l*, 257 F. App'x 8 (9th Cir. 2007) (" If the travel time was reasonably expended, the travel costs should also be recoverable."); *Arch v. Glendale Nissan*, No. 03 C 7297, 2005 U.S. Dist. LEXIS 12198 (N.D. Ill. June 7, 2005) (citing *In re Maurice*, 69 F.3d 830, 834 (7th Cir. 1995)); *In re Raytech Corp.*, 241 B.R. 785, 789 (D. Conn. 1999); *Ilick v. Miller*, 68 F.Supp.2d 1169, 1178 (D.Nev.1999).

Here, Defendant's warranty (see Trial Exhibit 10) mandates a consumer to file their lawsuit in the Northern District of Indiana — without regard to where the consumer-plaintiff or their attorney may be located.

Defendant has been known to vigorously enforce its warranty's forum and jurisdiction and applicable law clauses as seen in this case and elsewhere. For a few examples, see, *Ramero v. Gulf Stream Coach, Inc.*, 2008 U.S. Dist. LEXIS 86814 (D.N.J. Feb. 19, 2008); *Dibsie v. Gulf Stream Coach, Inc.*, 2008 U.S. Dist. LEXIS 41652, 2008 WL 2230658 (D.N.J. May 28, 2008); *Hoskins v. Gulf Stream Coach, Inc.*, 2012 Tex. App. LEXIS 5055, 2012 WL 2394055 (Tex. App. Houston 14th Dist. June 26, 2012); *Oldenburg v. Gulf Stream Coach, Inc.*, 2007 U.S. Dist. LEXIS 52707 (D. Minn. Apr. 17, 2007); *Roxbury v. Gulf Stream Coach, Inc.*, 2010 N.J. Super. Unpub. LEXIS 2290 (Law Div. Feb. 5, 2010); *Aquair Ventures, LLC v. Gulf Stream Coach, Inc.*, 2009 U.S. Dist. LEXIS 46727, 2009 WL 1458264 (N.D. Cal. May 26, 2009); *Garrett v. Gulf Stream Coach, Inc.*, 2009 U.S. Dist. LEXIS 29348, 2009 WL 936297 (E.D. Va. Apr. 7, 2009); *Rowsby v. Gulf Stream Coach, Inc.*, 2009 U.S. Dist. LEXIS 40046, 2009 WL 1154130 (C.D. Cal. Feb. 9, 2009); *McGuire v. Gulf Stream Coach, Inc.*, 2007 U.S. Dist. LEXIS 14410, 2007 WL 675474 (E.D. La. Feb. 28, 2007); *Daley v. Gulf Stream Coach, Inc.*, 2000 U.S. Dist. LEXIS 23529, 2000 WL 33710836 (D. Utah June 2, 2000); *Sipes v. Gulf*

*Stream Coach, Inc.*, 2012 U.S. Dist. LEXIS 40226 (N.D. Okla. Mar. 20, 2012); *Progressive Ins. Co. v. Gulf Stream Coach, Inc.*, 2008 U.S. Dist. LEXIS 25324, 2008 WL 905232 (E.D.N.Y. Mar. 31, 2008); *Gordon v. Gulf Stream Coach, Inc.*, 2008 U.S. Dist. LEXIS 90467, 2008 WL 3200257 (N.D. Ohio Aug. 5, 2008).

Defendant, meanwhile, ships its new Rv's all over the United States for retail to consumers living hundreds and thousands of miles from Indiana. For example, defendant's web site has a "dealer locator" tab that gives Gulf Stream customers the ability to find an authorized retail distributor nearest them at which a customer can presumably purchase a new Gulf Stream Rv.[1] A quick search reveals that within 500 miles of Seattle, Washington there are 33 Gulf Stream retail dealer locations. Looking to the southwest, it shows that within 500 miles of San Diego, California there are 23 Gulf Stream retail dealer locations. To the northeast, it shows that within 500 miles of August, Maine there are 99 Gulf Stream retail dealer locations. And to the southeast corner of the country, it shows that within 500 miles of Miami Beach, Florida there are 20 Gulf Stream retail dealer locations.

Defendant sells its Rv's everywhere but requires all consumers and their attorneys to travel to Indiana to litigate any claims against defendant Gulf Stream.

With its national retail sales approach, Defendant is obviously fully aware that any litigation will more than likely require a consumer and their counsel to engage in significant travel to and from Indiana to conduct depositions and attend various court conferences and trial.

---

[1] http://www.gulfstreamcoach.com/dealer-locator

The defendant having forced Plaintiffs and their counsel to travel to Indiana, Plaintiffs are entitled to compensation for their counsels' travel time in this case at their full hourly rate.

### X.  The Expense of Expert Witnesses Is Compensable in this Case.

For seven years the defendant denied that the subject Rv was defective and that it had breached its warranty to Plaintiffs. Repeated settlement efforts failed. It was necessary, therefore, for Plaintiffs to prove their case. To do that, it was necessary for Plaintiffs to hire experts who could explain to the Jury how the room slide-out system here was supposed to work and how it failed to work properly and how defendant's repair efforts failed to finally repair it and their damages and economic injury.

The analysis of this expert witness fee recovery issue starts with a case where the Seventh Circuit considered the expense of an expert witness, i.e., expert witness "fees," and whether it was recoverable in a civil case and decided, based on the specific fee-shifting statutory language involved there, that it was not. In so doing, the Court held that attorney fees and expert witness fees are each a distinct item of "expense" and explained the applicable rules for determining their recovery in federal civil litigation.

In *Hampton v. American Plumbing & Sewer*, 1996 U.S. App. LEXIS 21823 (7th Cir. 1996), the Seventh Circuit held that, generally, the expense of hiring an expert witness may not be calculated as part of attorneys' fees or allowable costs except as may be allowed by the specific provisions of an applicable fee-shifting statute. *Hampton*, 1996 U.S. App. LEXIS at *6.

The Court then turned to the statute involved there, the FLSA's fee-shifting provision, which stated:

The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.[2]

Then, at *Hampton*, 1996 U.S. App. LEXIS *4, the Court analyzed the FLSA fee-shifting statute's "costs of the action" language.

The statute at issue here, § 216(b), does not provide explicit statutory authority for the recovery of expert witness fees; it provides only for the shifting of a "reasonable attorney's fee... and the costs of the action." 29 U.S.C. § 216(b). Thus, the accountant fees, if recoverable at all, are recoverable as either "attorney's fees" or "costs of the action." The Supreme Court has precluded the first possibility, holding that the phrase "a reasonable attorney's fee" does not include within its scope expert witness fees. Casey, 499 U.S. at 92 (under 42 U.S.C. § 1988, "attorney's fees and expert fees are distinct items of expense."). As for the other possibility, "costs" are defined in 28 U.S.C. § 1920 and do not include expert witness fees, unless the expert is appointed by the court. 28 U.S.C. § 1920(6).

Since the statute said nothing about "non-court" other costs or expenses of litigation, the Court ruled the plaintiff's expense of the expert was not recoverable under that the FLSA's fee-shifting provision's statutory language.

It is thus seen that the fee-shifting statute's language is the key to recovery of the expense of hiring and using an expert in federal litigation.

Whether a prevailing plaintiff can recover the expense of their expert witness fees under the Magnuson Moss Warranty Act ("MMWA") has not been addressed by this Court. As seen in *Hampton*, most of the case law surrounding the recovery of the expense of an expert witness in fee-shifting cases is specific to the applicable statute involved. Some statutes permit recovery while others do not and others make no specific mention of it at all.

---

[2] 29 USCS § 216

Page 16

As such, this Court must focus on the statutory language of the MMWA when determining whether Plaintiffs are entitled to recover their expense of hiring and using their expert witnesses in this case. Here we see a consumer's costs and expenses are allowed to be recovered by the MMWA.

The applicable language states:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.[3]

The statutory language of the MMWA is clearly distinguishable from the FLSA statutory language. Here, the statute did not confine the recovery of costs to merely "costs of the case" but expanded it to include recovery of any costs and expenses related to the consumer-plaintiff's "commencement or prosecution" of the MMWA case.

The MMWA allows a prevailing plaintiff to recover the *costs and expenses* reasonably incurred by the plaintiff "for or in connection with the commencement and prosecution" of the action. See *Skelton v. General Motors Corp.*, 860 F.2d 250, 256 (7th Cir. 1988). As a remedial consumer protection statute, Congress clearly intended the broad language it used to cover more than just the "costs of the action."

Notably, in *Hampton* the Court held that attorney fees and "expert fees" are distinct items of "*expense*" in a case. *Hampton*, 1996 U.S. App. LEXIS at *6 (citing *West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 92 (1991). (Emphasis added). Thus,

---

[3] 15 U.S.C. §2310(d)(2).

the MMWA actually allows for a prevailing consumer-plaintiff to recover expenses, including attorney fees and expert witness fees if the expense is "reasonably incurred."

Here, due to the nature of the case and Defendant's stalwart insistence that there was no defect or warranty breach or failure to repair the subject Rv's slide out system, Plaintiffs were required to hire experts in order to prove the factory was incorrect, that Plaintiff's factual position was correct, that defendant had a reasonable opportunity to repair the system and failed and Plaintiffs were damaged.

In short, Defendant forced Plaintiffs to prove their case.

The expense of hiring experts to testify for Plaintiffs is not a "cost of the action" but it is an expense or cost "for or in connection with the commencement and prosecution" of the action, just as the statute says. Thus it is recoverable under the MMWA's fee-shifting statutory language which is applicable here.

Therefore, Plaintiffs in this case are entitled to recover the $28,978.23 in expert witness fees that Plaintiffs were required to incur in order to prosecute their claims.

Since the MMWA allows a consumer to recover their costs and expenses to prosecute and prevail on a MMWA case, Plaintiffs in this case are entitled to recover their costs of litigation, including deposition and other expenses explained in the affidavits of Attorneys Burdge and Connors, including $9,924.27 paid through the Burdge Law Office as itemized on Exhibit 1-H attached to Burdge affidavit, Exhibit 1.

## Xi.    Defendant's Strong Defense Justifies a Full Award of Fees.

Plaintiff fully expects that the Defendant will argue that the total time spent on prosecuting this case was unreasonable.  However, in light of Defendant's stalwart defense of the case and its employment of no less than six different attorneys in its

defense, Plaintiffs counsels' hours were not excessive. See *Blumenthal v. G-K-G, Inc.*, Case No. 89 C 8693, 1993 U.S. Dist. LEXIS 14569, *6-7 (N.D. Ill. Oct. 13, 1993) (citing *Monroe v. United Airlines, Inc.*, 565 F. Supp. 274, 279 (N.D. Ill. 1983); see also *Pressley v. Haeger*, 977 F.2d 295 (7th Cir. 1992) (plaintiff's hours not excessive in light of defense he was required to overcome).

Defendant certainly has the right to defend every aspect of the case, file every motion it desires, deny all the facts asserted, dispute the credibility of Mr. Hoopes, Mrs. Hoopes, challenge Plaintiffs' experts, etc. However, while asserting a strong defense may be viewed by some Rv manufacturers as effective "trench warfare," it runs the risk of a significant downside in that it can require a consumer-plaintiff to fight harder in order to prove their case. Perhaps a defendant's viewpoint is that some consumers will simply give up or give in and they may save money by vigorously fighting every case with which they may "out save" what they have to pay out to those few consumers who do not give up or give in.

In short, the amount of a consumer-plaintiff's attorney fees is, at least to some degree, in the control of the merchant-defendant.

For more than seven years, Defendant has ardently and obstinately litigated this case even though this case could have been settled reasonably (and comparatively cheaply) before it ever started, and still reasonably and cheaper at various points along the way during any of the numerous settlement efforts undertaken. Given the circumstances, Defendant can hardly say now that the amount requested is unreasonable. After all, the majority of the fees were incurred purely because Defendant refused to settle reasonably when the fees were only a fraction of the request now before

this Court.

Further, in determining whether to include certain expenses as a part of attorney fees, the trial court should consider the actual billing practices of the party's attorney. *Fortner v. Ford Motor Co.*, 5th Dist. Stark Case No. 1997CA00177, 1998 Ohio App. LEXIS 752, *4 (Feb. 9, 1998) (citing *Scheiderer and Associates vs. City of London*, 12th Dist. Madison Case No. CA95-08-022, CA95-08-024, 1996 Ohio App. LEXIS 3296 (August 5, 1996)). Here, it is the actual billing practice of Plaintiffs' counsel to require Plaintiffs to pay for expert witnesses. See Affidavit of Ronald L. Burdge, Exhibit 1, para. 13.

## XII.   A Modest Enhancement of the Fee Award Is Appropriate in this Case.

Due to Defendant's strong and consistent defense of the case, Plaintiffs had to fight over 7 years to win this case, thereby delaying the payment of fees to attorney Burdge and his legal staff. Delay in payment be compensated in either of two ways: (1) by using the attorneys' current rates or (2) by using historical rates plus a prime rate enhancement. The attorneys of Burdge Law Office who worked on this case increased their hourly rates over the time this case has been pending. Plaintiffs request an enhancement in this case which would increase the hourly rates awarded the Burdge Law Office attorneys to their current hourly rates. The increased hourly rates for the attorneys results in a modest enhancement of $27,614.50, as calculated below.

|  | Old Rate | Current Rate | Hours | Old Total | New Total |
|---|---|---|---|---|---|
| Ronald Burdge | 400 | 425 | 455.71 | 182,284.00 | 193,676.75 |
| Beth Well | 275 | 350 | 13.62 | 3,745.50 | 4,767.00 |
| Scarlett Steuart | 175 | 250 | 202.67 | 35,467.25 | 50,667.50 |

| | | | | | |
|---|---|---|---|---|---|
| Jacob Mosher | 125 | - | 25.62 | 3,202.50 | 3,202.50 |
| Elizabeth Nijak | 125 | - | .2 | 25.00 | 25.00 |
| Katy Shover | 125 | - | 1.49 | 186.25 | 186.25 |
| Brandon Wilder | 125 | - | 1.63 | 203.75 | 203.75 |
| | Totals | | 700.94 | 225,114.25 | 252,728.75 |

Once the lodestar has been determined, it can be adjusted to account for factors not subsumed by the lodestar calculation itself. *Picket v Sheridan Health Care Center*, 664 F.3d 632 (7th Cir. 2011); *Waters v. Wis. Steel Works of Int'l Harvester Co.*, 502 F.2d 1309, 1322 (7th Cir. 1974); see also *Heyne v. Nick's Am. Pancake & Café, Inc.*, No. 3:11-CV-305 JD, 2013 U.S. Dist. LEXIS 162891, *29-31 (N.D. Ind. Nov. 15, 2013) (referencing factors set forth in the *Waters* case).

In the case of the fees sought by attorney Burdge and his legal staff who worked for Plaintiff for the last four years of this litigation, all but $5,000 (the initial retainer) of the fees earned and remaining unpaid have been delayed by the litigation; in short, they were not paid during the course of the litigation. Burdge Affidavit, Exhibit 1, para. 6.

The adjustment factors, some of which may be subsumed in establishing the lodestar, include:

1.    The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

2.    The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

3.    The fee customarily charged in the locality for similar legal services.

4.    The amount involved and the results obtained.

Page 21

5.   The time limitations imposed by the client or by the circumstances.

6.   The nature and length of the professional relationship with the client.

7.   The experience, reputation, and ability of the lawyer or lawyers performing the services.

8.   Whether the fee is fixed or contingent.

Further, increasing hourly rates for risk and delay is notably allowed by Court cases, as cited below.

Applying the above factors in this case, it becomes apparent that Plaintiffs are entitled to the modest enhancement of their attorney fee award sought here.

First, as explained above, the hourly rate and hours expended to litigate this case were reasonable. Increasing hourly rates for risk and delay is one way of restoring the hourly rate a lawyer could obtain from a paying client, and a necessary way when the base of the fees must be the hourly rate. See *Skelton v General Motors Corp.*, 860 F.2d 250, 257, fn 9, citing *Kirchoff v Flynn*, 786 F.2d 320, 326 (7th Cir. 1986).

Second, this case was legally complex and required extensive legal research and briefing at several stages throughout its course. In order to properly litigate their case, Plaintiffs were required to hire experts and attorneys who specialize in consumer law. See Affidavit of Steven Hofer, ¶ 2 (Exhibit 3); see also Affidavit of Robert E. Duff, ¶ 13 (Exhibit 4).

Third, the experience, reputation, and ability of the lawyers also weighs in favor of enhancement. Attorney Burdge has a reputation of being a national expert in the specialized area of vehicle warranty litigation and the Magnuson Moss Warranty Act, especially issues regarding recreational vehicles. Id. Moreover, Attorney Burdge

accepted the case on a contingent fee-shifting basis. Thus, Plaintiffs were not required to pay for the time spent by Attorney Burdge and his staff as it was being incurred.

Finally, the results obtained also weigh in favor of enhancement. Defendants forced Plaintiffs to litigate their case all the way to trial. After a 4 day trial, the Jury found for Plaintiffs on their breach of warranty and Magnuson Moss Warranty Act claim. Moreover, the Jury awarded Plaintiffs a verdict of $150,000.00. See *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 1940 (1983)("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.").

Thus, considering the reasonableness of the time spent by counsel, the complexity of the case, the reputation of counsel, and the extent of counsel's success, Plaintiffs request that this Court enhance the attorney fee award.

## Conclusion

For the above reasons, Plaintiffs submit that they are entitled to a full award and reasonable enhancement of the attorney fees and litigation costs incurred in this case against Defendant.

Plaintiffs ask the Court to award them $225,114.25 for attorney fees for attorney Burdge's law firm plus an enhancement of $27,614.50, for a total of $252,728.75.

Plaintiffs ask the Court to award them $38,902.50 for costs of experts and litigation, as tracked and itemized by Burdge Law Office.

Plaintiffs also ask the Court to award them $162,213.31 for attorney fees and costs ($156,105.00 and $6,108.31, respectively) for Thomas Connors' law firm's work on

this case.

The following exhibits are attached to this memorandum and fully incorporated herein by reference:

Ex. 1   Affidavit of Counsel Burdge In Support of Plaintiffs' Motion for Fees/costs

        Ex. 1-A        Credentials of Attorney Ronald L. Burdge

        Ex. 1-B        Credentials of Attorney Elizabeth Wells

        Ex. 1-C        Fee & Cost Statement

        Ex. 1-D        Attorney Ronald L. Burdge Time Records

        Ex. 1-E        Attorney Elizabeth Wells Time Records

        Ex. 1-F        Attorney Scarlett Steuart Time Records

        Ex. 1-G        Paralegal & Law Clerk Time Records

        Ex. 1-H        Cost of Litigation Records

Ex. 2   Affidavit of Ryan R. Frasher

Ex. 3   Affidavit of Steven Hofer

Ex. 4   Affidavit of Robert E. Duff

Ex. 5   Affidavit of Thomas W. Connors In Support of Plaintiff's Motion for Fees/costs

        Exh. A        CV of Attorney Thomas Connors

        Exh. B        Fee and Costs Statement

        Exh. C        Time and Costs Records

        Exh. D        CV of Attorney Robert B. Preston, III

        Exh. E        CV of Attorney James M. Wherley, Jr

        Exh. F        CV of Attorney Rod A. Moore

Ex. 6   Affidavit of Attorney Burdge in Support of Thomas Connors Attorney Fee Motion

Ex. 7   Affidavit of Robert E. Duff (in support of Connors Motion)

Respectfully submitted,

/s/Ronald L. Burdge
RONALD L. BURDGE
Co-Counsel for Plaintiffs
8250 Washington Village Drive
Dayton, Ohio 45458-1850
Telephone:   937.432.9500
Facsimile:   937.432.9503
Email:       Ron@BurdgeLaw.com

## CERTIFICATION

A copy of the foregoing was filed electronically on April 27, 2017.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Ronald L. Burdge
RONALD L. BURDGE
Co-Counsel for Plaintiffs

Z:\data\Hoopes\Atty Fees\Mtn for Atty Fees\Etc Memo in Support of Motion for Fees 042817 ss.wpd