UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
AT FORT WAYNE

**NATHAN HOOPES, et. al.**

    PLAINTIFFS

- VS. -

GULF STREAM COACH, INC.

    DEFENDANT

CASE NO 1:10-cv-00365-RL-RBC

JUDGE JON E. DeGUILIO

AFFIDAVIT OF COUNSEL BURDGE
IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEY FEES
AND COSTS

---

State of Ohio, County of Montgomery, SS:

Ronald L. Burdge, being first duly sworn and cautioned, deposes and states as follows:

1. I am an attorney admitted to the bar of the United States District Court of Indiana, Northern District. I am also admitted to practice law in the State of Ohio, being Registration Number 0015609;

2. A true and accurate copy of my current "CV", or Credentials, is attached hereto as Exhibit 1-A and all of the statements and information contained in it is true and accurate to the best of my knowledge, information and belief;

3. I was licensed to practice law in the state of Ohio by the Ohio Supreme Court in November 1978; I am also licensed to practice in the Commonwealth of Kentucky, and admitted to practice before the United States Supreme Court, the Northern and

Page 1



Southern Divisions of the US District Court of Ohio, the Northern and Southern Divisions of the US District Court of Indiana, the US District Court of Colorado, the Sixth Circuit Court of Appeals, and have represented consumers in over 7,000 cases involving laws and claims similar to those in this case;

4. All opinions I am giving in this affidavit are based upon my education, training and experience, and are given to the best of my information, knowledge and belief, and are based on my own personal knowledge. My experience includes litigation and handling Consumer Law cases continuously since 1978 at all levels of the judicial system and including both state court and federal court cases; I have also given numerous seminars and lectures before lawyers, judges, and law professors involving Consumer Law and related issues for more than 25 years at local, statewide and national venues;

5. I have reviewed the pleadings in this case and am aware of the nature of this litigation as a result of having represented the Plaintiffs as co counsel in this case beginning January 9, 2013 and continuously thereafter;

6. Under the attorney fee agreement in this case, Mr. and Mrs. Hoopes paid my office a retainer of $5,000 and a costs deposit of $1,000. Under the fee agreement with Mr. and Mrs. Hoopes, the case is being handled on a contingent hourly rate fee shifting basis that is contingent on Plaintiff prevailing and attorney fees being granted by the Court at our normal hourly rates for the billable time expended and the defendant being ordered to pay the fees. If Mr. and Mrs. Hoopes did not prevail, then there would be no right for Burdge Law Office to recover attorney fees beyond the retainer.

7. Burdge Law Office has a standard procedure for maintenance and accounting

of billing records for our cases. It requires all time-keeping employees to contemporaneously document their time as tasks are performed and any litigation costs as they are incurred. Those time and costs records are then entered into a computer program daily. The time and costs records in the program are then compiled monthly and billable records are reviewed for accuracy and reasonableness by the Office Manager, who has been with Burdge Law Office for over ten years doing this and other work tasks. In a post-verdict contingent hourly rate fee shifting case where our client has prevailed, the time and costs records are again reviewed in their totality by the law firm's Office Manager for accuracy and reasonableness first, then they are printed out and reviewed a second time by the lead attorney on the case for accuracy and reasonableness again. At both internal review stages, the time and costs may be reduced by the reviewer but are not allowed to be increased. Thereafter, the printed records are attached to the appropriate affidavit and motion for filing in Court.

8. In this case, the Amended Complaint initially included claims based on Ohio law and those claims were dismissed on defendant's motion and the 15.75 hours of time that was expended in pursuit of Ohio law based claims is not included with the time records or fee request being made by Attorney Burdge. Also, in compiling the fee records for submission to this case, 20.43 hours of various time entries were reduced to a "no charge" status through the exercise of billing discretion and were deleted from this counsel's fee request entirely since no compensation is sought for those entries. Prior to that review, 6.2 hours of time related to defeating Defendant's Daubert Motion against Thomas Bailey was reduced to a "no charge" status also.

9. This case involved fee shifting claims and one non-fee shifting claim. It also involved claims based on Indiana and/or Ohio laws and a prayer for rescission. Ultimately, on defendant's motion the Ohio law-based claims and the rescission argument were dismissed by the Court. Of the remaining claims in this case for trial, the time expended in prevailing on the Magnuson Moss Warranty Act claim necessarily benefitted the other claims in the case, because the room slide-out system's defects and the defendant's conduct regarding that was the common core of facts and related legal theories for the entire case and the time spent on proving those facts in this case could not be easily divided on a clam by claim approach.

10. Attached hereto, as Exhibit 1-C, is a true and accurate Fee and Cost Statement which represents a summary of the law firm billing records in the prosecution of this case, true and accurate itemized details of which are attached hereto as Exhibits 1-C, 1-D, 1-E, 1-F, 1-G, 1-H; all of these exhibits are business records of the Burdge Law Office that are under my direct control and supervision in my job responsibilities in my law office; I am familiar with the business records of my law office and Exhibits 1-A, 1-B, 1-C, 1-D, 1-E, 1-F, 1-G and 1-H are accurate copies of original business records and data of my law office that were made by employees of my law office in the regular course of business; it is the regular course of our business to make such records and these records were made at or near the date and time of the occurrence of the matters set forth in these records by or from information transmitted by a person with knowledge of those matters stated in the attached records;

11. Based upon my education, training and experience, it is my opinion that a

reasonable hourly rate for the legal services I rendered in this case would be at least $400.00 an hour. My normal billable hourly rate currently is $425 and I have charged and been paid my full hourly rate by clients who retained me for legal services related to defective recreational vehicles similar to those legal services rendered for Plaintiffs in this case. Further, based on my education, training and experience, it is my opinion that on this particular case it was reasonable and necessary for me to expend the total amount of 455.71 hours on this case. That time includes depositions, pretrial conferences, two times preparing for trial, several mediation and settlement conferences, discovery, and defeating Defendant's Daubert motion against expert witness Thomas Bailey.

12. Further, based on my education, training and experience, it is my opinion that it was reasonable and necessary to expend $38,902.50 in costs of litigation in this case, including three expert witness costs and expenses, actual travel costs, fax fees, online legal research, outside printing needs for the trial exhibits, and numerous deposition transcripts in this case. These costs include litigation costs of $9,924.27

13. Mr. Bailey's CV was previously submitted to the Court during the hearing on defendant's Daubert motion. I have personally dealt with over a dozen expert witnesses including appraisers retained by consumers on defective vehicle cases and am familiar with the hourly fees charged by such experts in these cases and it is my experience that the hourly rate charged by Mr. Bailey for his expert services in this case were reasonable. Mr. Bailey charged an hourly rate of $225 in this case and his time expended in this case involved travel, inspection of the Rv, expert report research and writing, expert-attorney

conferences, expert-plaintiff conferences, Daubert hearing preparation, Daubert hearing travel and testimony, trial preparation, and the trial itself. His total expert expense and cost was $21,509.48 and based on my experience that amount is reasonable for the work necessary in this case and it was paid by Plaintiffs. It is our normal billing practice to require a client to pay the costs and expenses of the retained expert in their case and that billing procedure was carried out in this case.

14. Mr. Garceau's CV was previously submitted to the Court during the hearing on defendant's Daubert motion. I have personally dealt with engineers retained by consumers on defective vehicle cases and am familiar with the hourly fees I have seen charged by such experts in these cases and it is my experience that the hourly rate charged by Mr. Garceau for his expert services in this case were reasonable. Mr. Garceau charged an hourly rate of $175 in this case and his time expended in this case involved travel, inspection of the Rv, expert report research and writing, expert-attorney conferences, expert-plaintiff conferences, Daubert hearing preparation, Daubert hearing travel and testimony, trial preparation, and the trial itself. His total expert expense and cost was $6,868.75 and based on my experience in hiring engineers for defective vehicle inspections and litigation, and their hourly rates, that amount is reasonable for the work necessary in this case and it was paid by Plaintiffs.

15. Mr. Meredith was an expert who was originally retained by Plaintiffs in this case. I also have had personal experience with Mr. Meredith, who is now deceased. It is my experience that his charge of $500 in this case was his ordinary initial charge for his expert witness services and it is my experience that this charge was reasonable and

customary for him.

16. The amount of $38,902.50 was incurred and expended by Plaintiffs in this case for costs of litigation and they were actually paid by Plaintiffs during the litigation and included expert witness fees and expenses, deposition costs, postage and photocopy and fax charges as well as filing fees and court costs. It is my experience that all of these types of litigation costs are routinely billed to and paid by the client in cases like this one and that is how they were done in this case also;

17. Based upon my education, training and experience, it is my opinion that a reasonable hourly rate for the legal services I have rendered in this case would be at least $400.00 an hour. That was my normal hourly rate at the at the time in this case and I performed legal service work for clients who were billed and paid at that rate. My current hourly rate is $425. I have been awarded various hourly rates over the years up to and including $350 an hour; in a contested fee hearing 1999 case of *Maurer v Ford*, Montgomery County Common Pleas Court (Ohio) Case No. 99-0171, I was awarded an hourly rate of $350 as being fair and reasonable, for example;

18. I am familiar with the professional background, education, training and experience of Attorney Elizabeth Ahern Wells since she is a partner at Burdge Law Office. Attached to this affidavit is a copy of her CV and I have reviewed it and based on my own personal knowledge and belief it is accurate in reciting her education, training, and experience. She was personally trained by me on how to handle consumer warranty litigation in cases such as this one. There were times when she assisted me in the handling of this case, doing attorney level work. She received her Bachelor of Arts degree

in 2000 and Juris Doctor degree in 2004. She was admitted to practice law in Ohio in 2004 and is admitted to practice in the Commonwealth of Kentucky, and all U.S. District Courts of Indiana and Ohio and Kentucky and a member of various local state and national bar associations. She has practice in the field of Consumer Law continuously since 2004. Based upon my education, training and experience, it is my opinion that a reasonable hourly rate for her legal services rendered in this case would be at least $275.00 an hour. That was her normal hourly rate at the time in this case and she performed legal service work for clients who were billed and paid at that rate. Her current hourly rate is $350. Further, that on this particular case it was reasonable and necessary for her to expend the total amount of 13.62 hours on this case;

19. I am familiar with the professional background, education, training and experience of Attorney Scarlett M. Steuart since she is an Associate Attorney at Burdge Law Office. She was personally trained by me on how to handle consumer warranty litigation in cases such as this one. There were times when she assisted me in the handling of this case, doing attorney level work. She received here Bachelor of Arts degree in 2010 and Juris Doctor degree in 2015. She was admitted to practice law in the state of Ohio in 2015 and subsequently admitted to practice in the Commonwealth of Kentucky and the U.S. District Court Northern District of Indiana. She has practiced in the field of Consumer Law continuously since August 2016. Based on my education, training and experience, it is my opinion that a reasonable hourly rate for her legal services rendered in this case would be at least $175.00 an hour.  That was her normal hourly rate at the time in this case and she performed legal service work for clients who

Page 8

were billed and paid at that rate. Her present hourly attorney rate is $250. Further, that on this particular case it was reasonable and necessary for her to expend the total amount of 202.67 hours on this case;

20. I am familiar with the professional background, education, training, and experience of Paralegal Katy Shover since she is a Paralegal at Burdge Law Office. She was personally trained by me on how to handle consumer warranty litigation in cases such as this one. trained by me on how to handle consumer warranty litigation like this case. There were times when she assisted me in the handling of this case, doing Paralegal level work. She received a Bachelor of Arts in Communication and Public Relations Degree in 2004 and her Paralegal Certification from Duke University in 2009. She has worked in the field of Consumer Law continuously since 2012. Based on my education, training and experience, it is my opinion that a reasonable hourly rate for her paralegal services rendered in this case would be at least $125 an hour. That was her normal hourly rate at the time in this case and she performed legal service work for clients who were billed and paid at that rate. That is still her current hourly rate. Further, that on this particular case it was reasonable and necessary for her to expend the total amount of 1.49 hours on this case;

21. I am familiar with the professional background, education, training, and experience of Paralegal Assistant Elizabeth Nijack since she was my Paralegal and Assistant at Burdge Law Office for more than ten years. She was personally trained by me on how to handle the paralegal consumer warranty litigation in cases such as this one. There were times when she assisted me in the handling of this case, doing Paralegal

level work. She had worked for another law office for more than five years prior to joining Burdge Law Office. Upon hiring her, I personally trained her for work as a Paralegal in the field of Consumer Law and she worked continuously as such for more than ten years with my firm. Based upon my education, training and experience, it is my opinion that a reasonable hourly rate for her Paralegal services rendered in this case would be at least $125 an hour. That was her normal hourly rate at the time in this case and she performed legal service work for clients who were billed and paid at that rate. Further, that on this particular case it was reasonable and necessary for her to expend the total amount of 0.20 hours on this case;

    22. I am familiar with the professional background, education, training, and experience of Law Clerk Brandon Wilder since he was my Law Clerk formerly employed at Burdge Law Office during his law school years at the University of Dayton School of Law in Ohio. There were times when he assisted me in the handling of this case, doing Law Clerk level work. Based upon my education, training and experience, it is my opinion that a reasonable hourly rate for his Law Clerk services rendered in this case would be at least $125 an hour. That was his normal hourly rate at the time in this case and he performed legal service work for clients who were billed and paid at that rate. Further, that on this particular case it was reasonable and necessary for him to expend the total amount of 1.63 hours on this case;

    23. I am familiar with the professional background, education, training, and experience of Law Clerk Jacob Mosher since he was my Law Clerk formerly employed at Burdge Law Office during his law school years at the University of Dayton School of Law

in Ohio. There were times when he assisted me in the handling of this case, doing Law Clerk level work. Based upon my education, training and experience, it is my opinion that a reasonable hourly rate for the Law Clerk services rendered by him in this case would be at least $125 an hour. That was his normal hourly rate at the time in this case and he performed legal service work for clients who were billed and paid at that rate. Further, that on this particular case it was reasonable and necessary for him to expend the total amount of 25.62 hours on this case;

24. Pursuant to our fee arrangement, Mr. and Mrs. Hoopes were required to pay for any expert witness fees.

25. The Magnuson Moss Warranty Act, like many consumer protection laws, has a private enforcement provision and a fee shifting provision.

26. I have been practicing in the field of Consumer Law since 1978. In the first four years of my practice I worked as an Associate Attorney in a small 4 lawyer general practice litigation firm and performed research and writing work on and/or handled as first or second chair, cases involving Bankruptcy Law, Consumer Law, Criminal Law, Domestic Relations Law, Juvenile Law, Medical Malpractice Law, Legal Malpractice Law, Personal Injury Law, Probate Law, Real Estate Law, and Workers Compensation Law. I most frequently assisted in research and writing and/or second chair on Criminal and medical malpractice and personal injury cases. Bankruptcy and Consumer Law cases were handled entirely by myself.

27. It is my experience over my career, and it is my opinion, that attorney fee awards in Consumer Law cases to prevailing plaintiffs have historically been insufficient

to generally attract qualified counsel to represent consumers on a contingency or partial contingency fee basis and that the high risk and work required to successfully prosecute a Consumer Law case is uniquely different and greater than handling some other types of cases, based on the novelty and difficulty of the legal and factual issues frequently involved, the historically "stubborn" nature of manufacturers to compromise disputes short of trial and to instead litigate disputes, the risk of collectibility of judgment, and the fact that the client relationship is almost always a "one time" event for the client and the attorney.

28. It is my opinion that the failure to adequately compensate consumer law plaintiffs and their attorneys has a negative effect on the ability of other consumers to obtain adequate legal representation for meritorious claims under various consumer protection statutes such as the Magnuson Moss Warranty Act.

29. As a result of the above experience , it is my opinion that an enhancement of the fee award in this case, to be determined by the Court, is fair and reasonable under DR 2-106(B) and would serve to have a positive effect on the ability of consumers to obtain adequate legal representation and thereby will encourage young attorneys to enter the Consumer Law field.

30. Further affiant says not.

RONALD L. BURDGE

Subscribed to and sworn to before me, a Notary Public in and for the State of Ohio, by the said person on April 27, 2017.

NOTARY PUBLIC

Z:\data\Hoopes\Atty Fees\Mtn for Atty Fees\Ron Aff on Motion for Fees 042717.wpd

KATHERINE SHOVER
NOTARY PUBLIC
FOR THE
STATE OF OHIO
My Commission Expires
5-31-21

Page 12